Claude **WEBBER** and wife, Helen Webber, Appellants,

v.

**UNION CARBIDE CORPORATION,** et al., Appellees.

Court of Appeals of Tennessee, Eastern Section.

Feb. 24, 1983.

Permission to Appeal Denied by Supreme Court June 27, 1983.

Jim D. Owen, Knoxville, for appellants.

Robert R. Campbell of Hodges, Doughty & Carson, Knoxville, for Dow Chemical Co.

Paul Campbell, Jr. of Campbell & Campbell, Chattanooga, for Texaco, Inc.

Harold B. Stone and Steven D. Lipsey, Knoxville, for Union Oil Co.

Jack B. Draper, Knoxville, for Cos-Mar, Inc. and Cosden Oil & Chemical Co.

Earl R. Layman, Knoxville, for Foster Grant Co., Inmont Corp.

Steven C. Rose and S. Morris Hadden, Kingsport, for Fibercast Co.

William A. Young, Knoxville, for Commercial Resins.

Wheeler A. Rosenbalm, Knoxville, for Gulf Oil Corp.

David W. Blankenship, Kingsport, for Norwood Chemical Co.

William D. Vines, III, Knoxville, for Amoco Chemical Corp.

Harry P. Ogden, Knoxville, for A Z Products.

Paul Hogan, Jr., Knoxville, for Whittaker Coatings and American Hoechst Corp.

R. Franklin Norton, Knoxville, for Structural Fibers, Inc.

J. Hartly Echerd and Jeffrey L. Cleary, Chattanooga, for Spencer Kellog, Shell Oil Co., Borg-Warner Chemicals, and Apco Oil.

## OPINION

PARROTT, Presiding Judge.

Plaintiffs, Claude Webber and wife Helen, appeal from the trial court's dismissal of their suit against the appellees based on the running of the statute of limitations.

In November of 1976, Claude Webber began suffering from a brain disorder that was later diagnosed as cerebella dysfunction. On October 26, 1977, the Webbers filed suit in the Circuit Court of Knox County alleging that his illness was caused by his exposure to a chemical known as methyl ethyl ketone peroxide (MEKP–60). This exposure allegedly occurred in the course of Webber's employment at Lake Flite Plastics. The complaint stated that the plaintiff first discovered his condition was due to exposure to the chemical on September 5, 1977. Named as defendants in this suit were manufacturers and suppliers of this chemical, W.R. Grace & Co. and Hatco. The Norac Company was later added as a defendant. An order of voluntary nonsuit was entered in this case on October 26, 1978; the plaintiffs' reason for taking the nonsuit was the failure of any expert to causally connect the plaintiff's illness to MEKP–60.

The plaintiffs, meanwhile, had filed a second suit on August 25, 1978, this time alleging that Webber's condition was due to "various chemicals" that he had been exposed to while at work. These chemicals were identified as acetone, ethyl acetate, and a fiberglass resin known as gelcoat. The plaintiff contended that he first discovered his condition could be due to exposure to these chemicals "within one year of the filing of this complaint." The defendants named in this second suit were Union Carbide Corporation, United States Steel Corp., Eastman Chemical Products, Inc., Ashland Chemical Co., Inc., Glascoat, Inc., and Cook Paint, Inc. This action was also nonsuited on October 26, 1978, because an expert was unable to causally connect these chemicals to the illness.

A third suit was filed on October 16, 1979, within one year of the previous nonsuits. All of the defendants from the previous suits were named as defendants in this third action. The allegations in the third suit were basically the same as in the other actions except that the chemicals complained of were identified as ethyl acetate, acetone, a resin solution with styrene, vinyl tolvene and acpylate monomers, polyester with styrene and lead chromate, and MEKP–60. Again the plaintiff alleged that he first discovered a causative connection between these chemicals and his condition on September 5, 1977.

In August of 1980, an expert testified in pretrial discovery that Webber's condition was due to his exposure to "styrene," a particular toxic substance which was found in products already complained of by the plaintiffs. The plaintiffs then submitted interrogatories to the defendants to learn

the identities of those manufacturers and suppliers who had provided the styrene. On March 6, 1981, the plaintiffs filed a motion to amend and an amended complaint seeking to add over twenty new defendants to this third suit. These new defendants, appellees here, were alleged to be the manufacturers and suppliers of the styrene that had contributed to Webber's illness.

Each of the newly added defendants filed motions to dismiss and/or summary judgment, asserting that the plaintiffs' suit was barred by the one-year personal injury statute of limitations (T.C.A. § 28–3–104) and by the four-year warranty statute of limitations (T.C.A. § 47–2–725). The trial court sustained all these motions and an order was entered on September 23, 1981, dismissing the plaintiffs' action against these defendants.

The primary question presented by this case is whether the personal injury statute of limitations has run as to the defendants added by the amended complaint of March 6, 1981. According to the plaintiffs, this cause of action did not accrue within the meaning of T.C.A. § 28–3–104 until he discovered the identity of the specific causative agent of his illness. Since the appellees were sued within a year of the plaintiffs' contention that styrene was the causative agent, the plaintiffs assert that the trial court erred in holding that the action was barred by the one-year statute of limitations.

T.C.A. § 28–3–104 states that "(a) Actions ... for injuries to the person ... shall be commenced within one (1) year after cause of action accrued. (b) ... insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on the date of the personal injury, not the date of the negligence or the sale of a product, and in said products liability cases no person shall be deprived of his right to maintain his cause of action until one (1) year from the date of his injury, and under no circumstances shall his cause of action be barred before he sustains an injury."

In *McCroskey v. Bryant Air Condition,* 524 S.W.2d 487 (Tenn.1975), the Supreme Court adopted the so-called "discovery rule." It held that in tort actions, including products liability suits, "the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered."

In applying this rule to the present case, the plaintiff contends that his cause of action did not accrue until August of 1980 when he discovered the identity of the specific substance supposedly causing his illness. The plaintiff ignores, however, that portion of the rule which says that a cause of action accrues when it should have been discovered in the exercise of reasonable care. The plaintiff knew of a causal relationship between the products he worked with and his condition as far back as September of 1977; he acknowledges this much in his third complaint filed in October of 1979. He chose in his earlier suits, and even in the present action, to pursue a remedy against only the makers of the finished products. The plaintiff apparently made no effort until 1980 or 1981 to locate the manufacturers and suppliers of any ingredient that went into the finished products; however, he certainly must have known that any one of these ingredients or a combination thereof could be responsible for his illness. The plaintiff suggests that he had no reason to inquire about specific substances (namely styrene) until 1980, but the record and common sense suggest otherwise. His 1979 complaint alleged that two of the original defendants' products contained styrene and that these products were among those that caused his illness. It was not until 1981, however, that he sent interrogatories to the original defendants inquiring as to the identity of the makers and sellers of styrene. This discovery could reasonably have been undertaken in 1977, 1978, or 1979. Under these circumstances, it must be said that the plaintiff had sufficient knowledge, or should have had sufficient knowledge, that he could have a cause

of action against these defendants long before he added them in 1981.

In *Teeters v. Currey,* 518 S.W.2d 512 (Tenn.1979), the Supreme Court held that in those cases where medical malpractice is alleged to have occurred through negligent surgical procedures, the cause of action accrues when the patient discovers or should have discovered the resulting injury. In a concurring opinion, Justice Harbison stated that the discovery rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a cause of action. He went on to say that "it does not, in my opinion, permit a plaintiff to wait until he knows all of the injurious effects or consequences of a tortious act. The statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry. (Citations omitted.)" It is apparent in this case that the plaintiff was put on inquiry with regard to styrene, especially since he lists it as one of the ingredients contained in products he complained of in his 1979 action.

The plaintiff relies on *Gilbert v. Jones,* 523 S.W.2d 211 (Tenn.App.1974), in support of his proposition that the statute does not run until the defendant is identified as the party who has wronged the plaintiff. In *Gilbert* the plaintiff suffered from high blood pressure that she later found was caused by oral contraceptives prescribed by the defendant. The court held that the cause of action accrued when the plaintiff was first apprised of the relationship between the high blood pressure and the contraceptives and not when the condition first appeared or when the pills were first taken. There is nothing in *Gilbert* to suggest, however, that the statute should have been tolled until the plaintiff could identify as defendants the manufacturers of specific ingredients or substances contained in the contraceptives. Once the contraceptives were recognized as the cause of the illness, the cause of action accrued.

The plaintiff also relies on the recent decision in *Foster v. Harris,* 633 S.W.2d 304 (Tenn.1982). In *Foster,* the plaintiff learned in January of 1976 that he had contacted serum hepatitus. It was not until July of 1976, however, that the plaintiff learned from his dentist that he had been infected with hepatitus in October 1975, and had probably passed the disease to the plaintiff at that time. The court held that the cause of action did not accrue until the plaintiff discovered that the source of the disease was a negligent act and until the identity of the tortfeasor became known. In the present case, however, the plaintiff knew that the source of his illness was a tortious act some three and one-half years before he attempted to add the appellees as defendants. Moreover, there is nothing in *Foster* to suggest that the plaintiff in that case should have known the identity of the tortfeasor any sooner. Under the facts in this case, the plaintiff should have known that he could have a cause of action against these appellees long before he chose to bring them into this action.

For the reasons given, the dismissal is affirmed with costs taxed to appellants.

SANDERS and FRANKS, JJ., concur.