Earl Ray WOODS, et ux., Appellants,

v.

The SHERWIN–WILLIAMS COMPANY, Inmont Corporation, and PPG Industries, Incorporated, Appellees.

Court of Appeals of Tennessee, Western Section, at Knoxville.

Dec. 9, 1983.

Permission to Appeal Denied by Supreme Court Feb. 27, 1984.

William H. Goddard, Dandridge, for appellants.

George D. Montgomery, Knoxville, for Sherwin-Williams.

G.W. Morton, Jr., Knoxville, for Inmont Corp.

Kenneth W. Kromer, Jr., Knoxville, for PPG Industries.

HIGHERS, Judge.

The plaintiffs appeal from a summary judgment in favor of the defendants based on the running of the statute of limitations.

Earl Ray Woods and his wife, Doris June Woods, filed suit against the defendants on March 13, 1980, alleging that the plaintiff, Earl Ray Woods, suffered injury as the result of the use of and exposure to paint products manufactured, sold, and distributed by the defendants. Since the suit of Doris June Woods is derivative, we will refer herein to Earl Ray Woods as the plaintiff and to appellees collectively as the defendants.

The plaintiff alleges that he was engaged in the occupation of automobile painter from June 15, 1972, to March 15, 1979, when he was advised by his physician that he was totally disabled. From at least as early as 1975 he experienced breathing problems, chest discomfort, and respiratory infections, but the plaintiff contends that he did not know until March 15, 1979, that he was permanently disabled as a result of exposure to the defendant's products.

The defendants filed a motion for summary judgment on March 9, 1982, alleging that the plaintiff's lawsuit was barred by the one-year statute of limitations, T.C.A. § 28–3–104. The plaintiff responded that the statute did not begin to run until March 15, 1979, when he discovered the nature and cause of his injury and, therefore that his lawsuit was timely filed on March 13, 1980. After consideration of the motion, the trial court found that it was well taken and entered summary judgment for the defendants on July 22, 1982.

The plaintiff relies upon the "discovery doctrine" enunciated in a line of Tennessee cases to the effect that a cause of action does not accrue until the injury occurs or is discovered.

To review this rule, and to trace its development, we must begin with *Jackson v. General Motors*, 223 Tenn. 12, 441 S.W.2d 482 (1969). In that case the plaintiffs, Mr. and Mrs. Jackson, brought suit when Mrs. Jackson was injured by an automobile which had been purchased some two and a half years prior to the accident. Mrs. Jackson alleged that she parked the vehicle in her driveway, placed the gear in the park position, set the handbrake, and then was injured when the car rolled backwards and struck her as she was walking behind it. The Court held that the cause of action arose when the car was sold and, therefore, the statute of limitations ran before the injury occurred.

Following the decision of the Court in *Jackson v. General Motors, supra*, the legislature amended T.C.A. § 28–304 (now T.C.A. § 28–3–104) to provide that in products liability cases the cause of action accrued "on the date of the personal injury" and that "under no circumstances" shall the cause of action be barred before the injury is sustained.

Thereafter, in *Teeters v. Currey*, 518 S.W.2d 512 (Tenn.1974), the "discovery rule" was extended by the Court to apply in malpractice actions. The plaintiff in that case gave birth to a normal child on June 5, 1970, but due to complications associated with the pregnancy she underwent a tubal ligation on June 6, 1970, to avoid future pregnancies. On March 9, 1973, she was delivered of a premature child, accompanied by severe complications, and she subsequently submitted to another tubal litigation on March 11, 1973. She filed suit on November 15, 1973, approximately three and a half years after the first operation but about eleven months after discovering her pregnancy. The trial court granted summary judgment on the plea of the statute of limitations. The Supreme Court reversed, stating:

We find it difficult to embrace a rule of law requiring that a plaintiff file suit prior to knowledge of his injury or, phrasing it another way, requiring that he sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable. 518 S.W.2d at 515.

In *McCroskey v. Bryant Air Conditioning Company*, 524 S.W.2d 487 (Tenn.1975), the plaintiff was injured on May 1, 1971, and subsequently died on September 10, 1971. Suit was filed on July 28, 1971, alleging that her injury (and, by amendment, her death) resulted from a defective gas furnace which was manufactured in 1967 and installed on or about February 9, 1968. Since the sale occurred in February 1968, and the 1969 amendment to T.C.A. § 28–304 (now T.C.A. § 28–3–104) did not become effective until May 20, 1969, the trial court held that the statute of limitations ran in February 1969, relying upon the holding in *Flynn v. Camp*, 225 Tenn. 457, 470 S.W.2d 347 (1971). The Supreme Court reversed, stating, "It is only just for us to decree that in any tort action the cause of action accrues when, and only when, the force wrongfully put in motion, produces injury." 524 S.W.2d at 489. The Court specifically overruled *Jackson v. General Motors, supra*, and announced the rule in tort actions that:

... the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. 524 S.W.2d at 491.

The latest development in this area of Tennessee law is found in *Foster v. Harris*, 633 S.W.2d 304 (Tenn.1982), in which the plaintiff was found to have serum hepatitis in January 1976. The plaintiff was unaware of the source of the condition, however, until he visited his dentist on July 21, 1976, and learned for the first time that his dentist was infected with serum hepatitis during a prior appointment on October 11, 1975, at which time he was exposed to the disease. The complaint was filed on February 11, 1977, and the trial court dismissed

because more than one year had elapsed since the discovery of the injury, which occurred in January 1976. The Supreme Court reversed and remanded for a trial on the merits. The Court said:

It is axiomatic that no judicial remedy was available to this plaintiff until he discovered, or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty. 633 S.W.2d at 305.

Against the background of these cases, the issue in this case is whether there is any genuine dispute of material fact that the plaintiff's cause of action accrued more than one year before suit was filed on March 13, 1980.

The record shows that the plaintiff began making complaints to his physician, Dr. John W. Ellis, Jr., regarding chest discomfort and breathing problems around 1975. In his deposition Dr. Ellis testified:

... But anyway, he has basically stopped working in the painting end of cars anyway. He said he just couldn't stand the drying agents, I think is the way he always described it, in the paints that he used.

And years ago, I advised him if he can't utilize these things and work in an environment with them without getting in trouble, then I'd recommend you do something else. And—

Q. When was that, Doctor, approximately?

A. Years ago. That was—

Q. Was that in '75 or—

A. '76, '76, around that time.

.  .  .  .  .

Q. It was your opinion, though, back then in '75 or '76 that this occupation of his was contributing to his problem, wasn't it, Doctor?

A. I think so, yes.

Q. And you told him that, too, I guess, didn't you?

A. Yes, sir.

Q. And he appeared to understand what you said?

A. I told him to either work in an atmosphere where he could avoid this or change his occupation, do something else.

The plaintiff was also seen by Dr. James D. Yates who notified Dr. Ellis of his findings by letter on June 4, 1975, wherein he said: "As you will note he has moderate impairment of his pulmonary function which is probably a combination of cigarette smoking *and his industrial exposure.*" (Emphasis supplied). When asked if he would have passed this information from Dr. Yates along to the plaintiff, Dr. Ellis replied:

A. Surely.

Q. And told him that there was a question, and he should do something about his work environment.

A. Right.

Beginning in January 1976 the plaintiff was seen by Dr. William K. Rogers, a thoracic surgeon, who diagnosed the plaintiff's condition as chronic obstructive lung disease attributable primarily to cigarette smoking and exacerbated by his environment at work. Dr. Rogers arrived at the conclusion in approximately April of 1976 that the plaintiff was permanently and totally disabled, and on April 21, 1976, he wrote a letter to plaintiff's attorney suggesting that the plaintiff would not be able to continue working. Dr. Ellis also wrote a letter dated June 4, 1976, in which he stated that the plaintiff was totally disabled.

It further appears from the record that the plaintiff applied for Social Security disability benefits and after the matter was presented before the Administrative Law Judge, the application was granted on February 8, 1977, finding that the plaintiff was disabled from and after December 1, 1975.

The plaintiff's wife, Doris Woods, testified that no tax returns were filed for 1977, 1978, or 1979, showing any paint and body shop operations, and that there were no operations of any consequence during those years.

After a careful review of the record, and of the pertinent cases, we are persuaded that the trial judge was correct in granting summary judgment and holding that this case was time-barred. Although the plaintiff filed an affidavit stating that he did not know he was permanently disabled until March 15, 1979, his affidavit does not conform to the requirements of Rule 56.05, T.R.Civ.P., by setting forth "specific facts showing that there is a genuine issue for trial." He makes no response to the testimony, for example, of Dr. Ellis showing that he was told as early as 1975 or 1976 that he had an injury, that it was related to the paints used in his working environment, and that he needed to avoid this or change his occupation. We do not believe the facts of this case fit within the "discovery rule" outlined from the law of this state. In this case the plaintiff knew of his injury, knew it either was or could be work-related, and knew the identity of the defendants since he selected and purchased the materials used in his shop.

In *Teeters v. Currey, supra,* Justice Harbison stated in his concurring opinion:

> As stated in the principal opinion, the rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action. It does not, in my opinion, permit a plaintiff to wait until he knows all of the injurious effects or consequences of a tortious act. [Citation omitted]. The statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry.

> •   •   •   •   •

> While the rule here adopted does relax, to some degree, the previous rule in the state regarding the statute of limitations, it does so only in favor of an innocent plaintiff who, under all of the circumstances, neither has nor could reasonably be expected to have knowledge of the existence of his claim. 518 S.W.2d at 518–519.

We are accordingly of the opinion that the judgment of the trial court should be affirmed. Costs are adjudged against the plaintiffs-appellants.

NEARN, P.J. (W.S.), and CRAWFORD, J., concur.