Mary A. CRAIG, Wife and Next of Kin of Charles L. Craig, Deceased, Plaintiff–Appellant,

and

Liberty Mutual Insurance Company, Intervening Plaintiff and Appellant,

v.

R.R. STREET & CO., INC., Laidlaw Corporation, Big "D" Industries, Inc., Ideal Chemical & Supply Company, Pennwalt Corporation, Cone Solvents, Inc., and Ashland Oil, Inc., Defendants–Appellees.

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 12, 1990.

Application for Permission to Appeal Denied by Supreme Court July 2, 1990.

**352**

Lee L. Piovarcy, Memphis, for plaintiff-appellant.

Carroll C. Johnson, III, Memphis, for Liberty Mut. Ins. Co.

Brian L. Davis, Memphis, for R.R. Street & Co., Inc.

John C. Speer, Memphis, for E.I. Dupon De Nemours & Co.

Kenneth R. Shuttleworth, Robert L. Sabbatini, Memphis, for Pennwalt Corp.

Joe D. Spicer, Marx J. Borod, Memphis, for Ideal Chemical.

Joseph M. Crout, Memphis, for Big "D" Industries.

Henry T.V. Miller, Memphis, for Laidlaw Corp.

Dale H. Tuttle, Memphis, for Cone Solvents, Inc.

CRAWFORD, Judge.

In this products liability case, the trial court sustained the defendants' motions for summary judgment on the ground that the action was barred by the statute of limitations.

Plaintiff, Mary A. Craig, filed a complaint on February 4, 1985, seeking damages for the wrongful death of her husband, Charles L. Craig, against the defendants, various suppliers and manufacturers of chemicals acquired by King Cleaners, Mr. Craig's employer. The complaint avers that plaintiff's husband was an employee of King Cleaners and sustained injuries and ultimately died as a result of his exposure to chemicals and solvents used in the course of his employment. She avers that defendants supplied the products to her husband's employer and that these products contained tetrachloroethylne, perchloroethylne, Stoddard solvent, methylchloroform and other toxic chemicals.

Plaintiff alleges that the defendants were negligent in their labeling of the products, in failing to adequately warn users of potential danger or to provide adequate safety data and technical information, and in failing to test the products or to make them safe. She also alleges that the defendants were negligent in failing to warn about the use of these products in combination with other chemicals or about the cumulative effects of the use of these products. The complaint also sues for strict

liability in tort and breach of implied warranty.

In their individual answers, each defendant denies liability and asserts various affirmative defenses, including the defense that the action brought by Mrs. Craig is barred by the applicable statute of limitations.

By order of the court entered April 18, 1988, Liberty Mutual Insurance Company, the workers compensation carrier for King Cleaners, was allowed to intervene to protect its subrogation interest for payments made pursuant to the Workers Compensation Act. Its intervening complaint, filed April 27, 1988, adopts the allegations of the plaintiff and further avers that Liberty Mutual became liable for workers compensation benefits by order entered March 25, 1988, and seeks recovery of the sums paid and to be paid pursuant to that order.

After considerable discovery, all of the defendants moved for summary judgment on the ground that the action is barred by the statute of limitations. Ideal Chemical & Supply Company, as a supplier and not a manufacturer, also asserts that it is entitled to summary judgment because, as a matter of law, it is not liable for defects in products which they receive in sealed containers and sell without reasonable opportunity for inspection, that it had no duty to warn, that it cannot be held strictly liable, and that there was no breach of implied warranty.

The trial court granted summary judgment to all defendants for the claims of both Mrs. Craig and Liberty Mutual. Both have appealed, and although they present several issues for review, we perceive the real issues to be:

1. Whether the trial court erred in granting summary judgment as to Mrs. Craig's suit, and

2. Whether the trial court erred in granting summary judgment as to Liberty Mutual Insurance Company's suit.

The record before the Court consists of the pleadings, depositions and other discovery items. A review of the record reveals the following pertinent facts:

Mr. Craig had been employed by King Cleaners for over twenty years. On October 3, 1983, he was admitted to the Veterans Administration Hospital with complaints of nausea, dizziness and lethargy. While in the hospital, he underwent various tests and was discharged on October 6, 1983. The discharge diagnosis included pancytopenia, a deficiency in blood cell formation. The discharge summary stated in part:

\* \* \* \* \* \*

... Patient was instructed that he should not return to work until further notice because his pancytopenia could certainly be secondary to his exposure to dry cleaning solvents. He was instructed not to be around dry cleaning or other solvents or chemicals until this issue is resolved and instructed to be off from work until further notice.

Mr. Craig's primary physician at the VA Hospital, Dr. Sam Lewis, wrote a handwritten letter to the Tennessee Department of Employment Security dated October 24, 1983 and Mr. Craig was given a copy of this letter. The letter states:

Mr. Charles Craig is continuing under our care at the VA Hospital, for a decrease of output of cells from bone marrow possibly related to exposure to dry-cleaning solvents.

He should be off from work until present illness is resolved. He should be at rest with minimal exertion. If any questions please call....

Dr. Lewis also wrote a hand-written note, which is undated, but which was received by Liberty Mutual Insurance Company, the workers compensation carrier for King Cleaners, in November, 1983. This letter states:

Mr. Charles Craig is under our care at the VA Hospital. He has a potentially life-threatening illness that could be a result of exposure to dry-cleaning solvents. He should not be around dry-cleaning or other chemicals until this issue is resolved. He should be off from present work until further notice.

Plaintiff's disability was reported as a workers compensation claim by the employ-

er's first report of work injury dated November 25, 1983. Mrs. Craig's deposition testimony states that her husband's physician thought that her husband had leukemia in October, 1983, and that it could have been caused by the exposure to chemicals in his work. She testified that she and her husband discussed the possibility that the chemicals used in the dry cleaning plant caused his leukemia.

The record further reveals that Mr. Craig handled the purchasing of the dry cleaning chemicals for his employer and made these purchases from the defendant Ideal Chemical and Supply Company, although they were manufactured by the other defendants.

In opposition to the motions for summary judgment, plaintiff relies on, among other things, the affidavit of attorney Eugene E. Brown, who was formerly with the firm of Martin, Tate, Morrow and Marston, plaintiff's present attorneys. Brown's affidavit states that he was assigned the task of investigating possible legal action for the Craigs in February, 1984, and after reading the discharge summary from VA Hospital, he contacted the treating physician, Dr. Sam Lewis, on April 11, 1984. His affidavit states:

I finally reached Dr. Lewis on April 11, 1984. He told me that he had only seen Mr. Craig two or three times. At those times, Mr. Craig showed signs of bone marrow suppression. Dr. Lewis stated that he did not know what caused the condition. He said it could have been caused by exposure to chemicals or it could have been caused by leukemia. Dr. Lewis went on to say that he did not know of the diagnosis of leukemia when he wrote his notes about the probable cause of Mr. Craig's illness. Dr. Lewis then stated that he would not have indicated in Mr. Craig's records that exposure to dry cleaning chemicals was a possible cause of Mr. Craig's illness if he had known that Mr. Craig suffered from leukemia.

Based on my conversation with Dr. Lewis, I believed and still believe that he had retracted any statements which appeared in Mr. Craig's medical records concerning a connection between Mr. Craig's illness and his exposure to dry cleaning solvents. Consequently, on April 11, 1984, I had to start completely anew to ascertain if there was any causal relationship between Mr. Craig's exposure to dry cleaning chemicals and the illness which resulted in his death.

■ The first issue for review is whether the trial court erred in granting summary judgment for all defendants and dismissing Mrs. Craig's suit for the wrongful death of her husband.

Plaintiff asserts that in late 1983 and early 1984, plaintiff did not have sufficient knowledge to start the running of the statute of limitations, and in any event, Dr. Lewis' statement to Eugene Brown in April, 1984, was sufficient to restart the running of the statute of limitations. She argues that prior to mid–1984, she did not have actual knowledge of the specific chemicals which caused her husband's illness, nor did she have knowledge as to the manufacturers and sellers of the chemicals.

Under T.C.A. § 29–28–103 (1980), personal injury actions against manufacturers or sellers for defective or unreasonably dangerous conditions of products must be brought within the period fixed by T.C.A. § 28–3–104.

T.C.A. § 28–3–104 (1980) provides:

**Personal tort actions**—(a) Actions for libel, for injuries to the person, false imprisonment, malicious prosecution, criminal conversation, seduction, breach of marriage promise, actions and suits against attorneys for malpractice whether said actions are grounded or based in contract or tort, civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes, and actions for statutory penalties shall be commenced within one (1) year after cause of action accrued.

(b) For the purpose of this section, insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on the date of the personal injury, not the date of the negligence or the sale of a product, and in

said products liability cases no person shall be deprived of his right to maintain his cause of action until one (1) year from the date of his injury, and under no circumstances shall his cause of action be barred before he sustains an injury.

The statute of limitations runs from the date a cause of action accrues. *Armistead v. Clarksville–Montgomery County School System*, 222 Tenn. 486, 437 S.W.2d 527 (1969). A cause of action for wrongful death accrues as of the date a cause of action accrues for the injury which resulted in the death. *Mosier v. Lucas*, 30 Tenn. App. 498, 207 S.W.2d 1021 (1947). The difficulty facing the courts is the determination of when the cause of action accrues. Through a series of cases beginning with *Teeters v. Currey*, 518 S.W.2d 512, 93 A.L. R.3d 207 (Tenn.1974), appellate courts of this state have considered various factual considerations dealing with this determination.

In *Teeters*, our Supreme Court held that in medical malpractice cases involving negligent performance of surgical procedures, a "cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury." 518 S.W.2d at 517.

In *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn.1975), suit was brought for personal injuries and wrongful death resulting from a defective gas furnace. The court held:

> ... that in tort actions, including but not restricted to products liability actions ... predicated on negligence, strict liability or misrepresentation, the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered. All cases contra are overruled.

524 S.W.2d at 491.

In *Foster v. Harris*, 633 S.W.2d 304 (Tenn.1982), a patient brought a malpractice action against a dentist after the patient contracted serum hepatitis. On October 11, 1975, while the plaintiff was being treated by the defendant dentist, the dentist lacerated his own finger and the plaintiff's lip and their blood intermingled. Approximately a month later plaintiff became ill and in January, 1976, learned he had serum hepatitis. However, he did not learn until July 12, 1976, that on the date his lip was lacerated the defendant dentist was infected with serum hepatitis and was the source of plaintiff's infection. The trial court held that the action was barred by the one year statute of limitations. The Supreme Court, in reversing the trial court, noted that in January of 1976 plaintiff only learned that he had the condition, i.e., hepatitis. He did not know, or have any reason to know, that this hepatitis was contracted by virtue of a negligent act of anyone, or who that person might be. The Court said:

> It is axiomatic that no judicial remedy was available to this plaintiff until he discovered, or reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced his injury; and (2) the identity of the defendant who breached the duty.

633 S.W.2d at 305.

In *Webber v. Union Carbide*, 653 S.W.2d 409 (Tenn.App.1983), the Eastern Section of this Court held that the statute of limitations had run as to the defendant-manufacturer of a particular component chemical who was brought into the case by an amendment to his complaint. The court noted that plaintiff knew of a causal relationship between the products he was exposed to in the course of his employment and his physical condition as far back as September, 1977, but he chose to pursue a remedy only against the makers of the finished product. The plaintiff argued that *Gilbert v. Jones*, 523 S.W.2d 211 (Tenn. App.1974), established that the statute of limitations does not run until the party who has wronged plaintiff is discovered. The *Webber* Court noted that in *Gilbert* the Court held that the cause of action accrued when the plaintiff was first apprised of the relationship between her high blood pres-

sure and the contraceptives. The Court said:

> There is nothing in *Gilbert* to suggest, however, that the statute should have been tolled until the plaintiff could identify as defendants the manufactures of specific ingredients or substances contained in the contraceptives. Once the contraceptives were recognized as the cause of the illness, the cause of action accrued.

653 S.W.2d at 412.

In *Woods v. Sherwin Williams Company*, 666 S.W.2d 77 (Tenn.App.1983), plaintiff, an automobile painter, sued the manufacturer and distributor of paint products to which he was exposed in his work. In about 1975, he had experienced breathing and respiratory problems, but learned for the first time on March 15, 1979 that he was permanently disabled as a result of exposure to the products. Plaintiff's suit was filed March 13, 1980, and this Court affirmed the trial court's dismissal of plaintiff's suit on the ground that it was barred by the one year statute of limitations. The record indicated that plaintiff had been advised by a physician as early as June, 1975, that he had moderate impairment of his pulmonary function, "which is probably a combination of cigarette smoking *and his industrial exposure.*" 666 S.W.2d at 79. (Emphasis in original). The Court said:

> In this case the plaintiff knew of his injury, knew it either was or could be work related, and knew the identity of the defendants, since he selected and purchased the materials used in his shop.

666 S.W.2d at 80.

In *Gosnell v. Ashland Chemical, Inc.*, 674 S.W.2d 737 (Tenn.App.1984), there was a wrongful death suit brought by the widow of the decedent against several paint manufacturers. The complaint was filed March 11, 1983, and alleges:

> ... that (1) she was the widow of Bobby Edward Merritt, who died of acute leukemia on September 14, 1981, (2) Mr. Merritt had been employed as a painter and mixer at a manufacturing facility for over 30 years, during which time he had been exposed to various paints, thinners, and solvents manufactured by the Defendants–Appellees, and (3) as a result of his exposure Mr. Merritt contracted the leukemia which eventually resulted in his death.

674 S.W.2d at 738.

The defendants moved for summary judgment on the ground that the action was barred by the one year statute of limitations since the suit was filed more than one year following decedent's death. The widow's affidavit filed in response to the motion for summary judgment stated "that she did not learn of the possible connection between her husband's illness and exposure to solvents and chemicals until she read a newspaper article in February, 1983." 674 S.W.2d at 739. She further stated that suit was filed immediately after obtaining this information. The court noted that the issue to be decided was whether the widow exercised reasonable care and diligence in discovering that the defendant's acts caused the illness and ultimate death of decedent and whether this issue was correctly disposed of by summary judgment. The Court, in reversing the trial court, said on petition to rehear:

> The Defendants presented no affidavits or testimony to support their motion for summary judgment, but defended by stating that the action was barred by the one-year statute of limitations of T.C.A. § 28–3–104. In the case at bar the Plaintiff placed her reasonable diligence in discovering the alleged cause of her husband's death at issue in her affidavit. The Defendants did not meet their burden of showing no genuine issue of material fact existed as to the Plaintiff's reasonable diligence and, therefore, their motion for summary judgment fails.

674 S.W.2d at 740.

In *Gibson v. Lockwood Products Division of J.L. Underwood*, 724 S.W.2d 756 (Tenn.App.1986), plaintiff was injured on June 12, 1984 in the course of his employment while operating an industrial machine. During the course of the workers compensation suit, he directed an interrogatory to the defendant to determine the identity of the manufacturer of the ma-

chine. The answer to the interrogatory erroneously identified the manufacturer. On June 10, 1985, plaintiff filed his suit against the defendant identified as the manufacturer. This defendant answered on July 26, 1985, and denied that it manufactured the machine, but identified the manufacturer and the installer. On September 12, 1985, plaintiff filed a motion to have these parties joined as parties defendant and the motion was granted by the court. After the filing of the amended complaint, the newly named defendants filed motions for summary judgment on the ground that the statute of limitations had run. The trial court granted the motions and dismissed the case and the Eastern Section of this Court affirmed. The Court said:

> A cause of action in a case such as the one before us accrues when the plaintiff discovers a causal connection between the injury and the product that caused the injury, or when in the exercise of reasonable care and due diligence, the plaintiff should have discovered the causal connection.

724 S.W.2d at 758.

The Court noted that the plaintiff's only effort to identify the manufacturer of the machine was the issuance of interrogatories, which was done some ten months after the accident occurred. The Court found that the plaintiff did not exercise due diligence in attempting to learn the identity of the manufacturer and installer of the machinery. The Court said:

> As is pointed out in Loren Cook's [defendant manufacturer] brief, this is not a case in which circumstances were totally· beyond the control of the injured party, not a case in which the plaintiff had no knowledge that a wrong had occurred, and not a case where a reasonable person would not be put on inquiry.
>
> The "discovery rule" applies only when "the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action." *Security Bank & Trust Co.*, [*v. Fabricating, Inc.,*] 673 S.W.2d [860] at 865 [Tenn.1983] (*quoting Hoffman v. Hospital Affil-*

*iates, Inc.,* 652 S.W.2d 341, 344 (Tenn. 1983)).

724 S.W.2d at 759.

With these cases in mind, we must determine whether there is any dispute of material fact as to when plaintiff knew or should have known of the causal connection between her husband's illness and acts of the defendants.

In reviewing a summary judgment, this Court must view all pleadings and affidavits in a light most favorable to the opponent of the motion and all conclusions of fact derived therefrom must be similarly construed. Summary judgment is to be rendered by a trial court only when it is shown that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Poppenheimer v. Bluff City Motor Homes,* 658 S.W.2d 106 (Tenn.App.1983).

The record is clear that plaintiff and her husband knew as early as October, 1983, that plaintiff was suffering from an illness which was caused by exposure to chemicals in his work place. The record does not disclose the efforts made by plaintiff or her husband prior to his death to ascertain the identity of the chemicals or the suppliers and manufacturers thereof. Mr. Craig did the buying of the chemicals and certainly his knowledge of his illness and the causal connection between the illness and his exposure to the chemicals involved, put him on inquiry as to the source thereof. We do not believe that there is any dispute as to a genuine issue of material fact that plaintiff and plaintiff's decedent did not use due diligence in ascertaining the causal connection between decedent's illness and the acts of the defendants herein. Accordingly, the order of the trial court granting summary judgment to defendants is affirmed.

█ The second issue for review is whether the trial court erred in granting summary judgment as to the claim of Liberty Mutual Insurance Company.

Liberty Mutual asserts that in cases involving third party actions by an employee or his dependents, the limitation period set out in T.C.A. § 50–6–112(d) controls over the general statute of limitations for per-

sonal injury actions contained in T.C.A. § 28–3–104. We do not disagree with that statement, but do not find any conflict between the provisions of T.C.A. § 50–6–112(d) and T.C.A. § 28–3–104. At the time our Supreme Court decided *Dobbins v. Terrazo Machinery & Supply Co.,* 479 S.W.2d 806 (Tenn.1972), there was a conflict between T.C.A. § 28–304 (now T.C.A. § 28–3–104) and T.C.A. § 50–914 (now § 50–6–112). However, since that time the statute of limitations for actions for personal injuries has been amended and the amendment removes the conflict that existed at the time that *Dobbins* was decided. In the case at bar, as we have heretofore noted, the injury for which suit was brought occurred more than one year prior to the institution of the suit. Therefore, it is barred by T.C.A. § 50–6–112(d), as well as T.C.A. § 28–3–104.

Liberty Mutual contends that the suit filed by Mrs. Craig within 18 months from the time the cause of action accrued preserves Liberty Mutual's claim. We disagree. T.C.A. § 50–6–112(d) provides in part:

> (d) Such action against such other person by the injured worker, or those to whom his right of action survives, must be instituted in all cases within one (1) year from the date of injury. Failure on the part of the injured worker, or those to whom his right of action survives, to bring such action within the one (1) year period shall operate as an assignment to the employer of any cause of action in tort which the worker, or those to whom his right of action survives, may have against any other person for such injury or death, and such employer may enforce same in his own name or in the name of the worker, or those to whom his right of action survives, for such employer's benefit, as such employer's interest may appear, and the employer shall have six (6) months after such assignment within which to commence such suit....

The statute is clear and unambiguous that for a period of one year from the date that the cause of action accrues, the employee or those to whom his right of action survives, can institute suit against alleg-

edly liable third parties. However, the statute explicitly provides that at the expiration of the one year, the claim of the employee is assigned to the employer. Thus, at the time Mrs. Craig filed her suit she had no cause of action against third parties, the same having been by operation of law assigned to Liberty Mutual. Clearly, Liberty Mutual could have filed its suit or intervened in Mrs. Craig's lawsuit which was subsequently dismissed within the eighteen month period provided in 50–6–112. There is little doubt that the legislature intended for the employer or the workers compensation carrier to proceed with its assigned claim within eighteen months of the date the cause of action accrues. Liberty Mutual's motion to intervene in April, 1988, came four years too late.

Accordingly, we affirm the action of the trial court granting summary judgment as to Liberty Mutual's claim.

The judgment of the trial court is affirmed and this case is dismissed. Costs of appeal are assessed against appellants equally.

HIGHERS and FARMER, JJ., concur.