Norma L. TEETERS, Appellant,

v.

Dr. Doyle E. CURREY, Appellee.

Supreme Court of Tennessee.

Dec. 9, 1974.

J. Troy Wolfe, Jr., Herbert A. Thornbury, Chattanooga, for appellant.

W. Ferber Tracy, Spears, Moore, Rebman & Williams, Chattanooga, for appellee.

## OPINION

HENRY, Justice.

This malpractice action essentially involves a determination of whether the statute of limitation begins to run from the date of the injury or from the date of the discovery of the injury.

The admitted facts are that on June 5, 1970, plaintiff gave birth to a normal child. Defendant was the attending physician. Following delivery, because of edema, anemia and other medical complications, he recommended that plaintiff have a bilateral tubal ligation, the purpose of which was to avoid future pregnancies. Defendant performed this surgery on June 6, 1970, and her recovery was uneventful.

On December 6, 1972 she was hospitalized at Newell Clinic and was attended by Dr. Edgar Atkin. Dr. Atkin discovered that she was pregnant. He so advised her and referred her to other physicians for obstetrical care.

On March 9, 1973 plaintiff was delivered of a premature child and there were severe complications. Pursuant to medical advice, another bilateral tubal ligation was performed on March 11, 1973.

Plaintiff instituted suit on November 15, 1973, three years, five months and nine days after the operation, but approximately eleven months after discovering her pregnancy.

Plaintiff alleges that during the course of this latter surgery it was discovered that the earlier surgery performed by the defendant was negligently and inadequately done and was not performed in accordance with proper standards of care and good medical practice.

Specifically, she charges that defendant failed to properly or completely sever the left fallopian tube in a manner which would assure sterility and prevent future pregnancies. Further, she charges that he failed to identify the right fallopian tube in a manner which would assure sterility and prevent future pregnancies. Further, she charges that he failed to cut, sever or ligate this tube in any manner.

The defendant's answer pleads the statute of limitations and denies that he was guilty of any act of negligence. He admits advising the tubal ligation but insists that he explained that "while it was intended that the operation would result in sterilization, this result was not guaranteed."

He asserts that the reason for this explanation was that for unknown reasons "on occasion even though a tubal ligation has been properly performed in accordance with accepted medical practice, over a period of time the body may bypass the effects of the operation and effectually refertilize the individual."

He insists that the operation was properly performed.

He further charges that she assumed the risk of pregnancy by engaging in activities which a reasonably prudent person should have recognized as being conducive to causing pregnancy.

After answer was filed, by leave of the Court, plaintiff amended so as to charge fraudulent concealment and continuing negligence.

Defendant filed a motion for summary judgment and supported it by his own affidavit which read as follows:

That he is the defendant in this lawsuit; that he is a doctor of medicine duly licensed to practice in the State of Tennessee; that in his professional capacity he has treated and performed surgery upon Norma Teeters, the plaintiff in this case; that specifically, on or about June 6, 1970, he performed a bilateral ligation of the Fallopian tubes upon the plaintiff; that he performed said operation in a careful and proper manner, in accordance with good and accepted medical standards for such a procedure; that the plaintiff recovered from her surgery without incident; that he believed after the operation, and believes now, that the Fallopian tubes were properly cut and tied during said operation; that the last time he saw her for any medical service was on December 20, 1970, at which time he treated her for an unrelated condition; that he has not treated, examined, or otherwise rendered any professional services to Norma Teeters since December 20, 1970; that he does not know and has no way of knowing why Norma Teeters became pregnant in spite of this operation, but as a physician and surgeon he is aware of instances where the Fallopian tubes have grown back even after proper surgery for their ligation.

Plaintiff filed no counter-affidavit. The record, in this regard, consists solely of the complaint, answer, motion for summary judgment and the affidavit of the defendant.

Thus, the threshold question is the correctness of the action of the trial judge in sustaining the motion for summary judgment.

T.R.C.P. 56.03 provides in part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any, show that there is *no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.* (Emphasis ours)

The motion for a summary judgment shows that it was made on the basis of the "attached brief and affidavit." (As a matter of fact the record shows that the words "and affidavit" were added in longhand, indicating that the brief was the only original basis.)

The brief appears in the technical record. It is devoted to the issues of fraudulent concealment and the running of the statute of limitations. In fact, the affidavit of the defendant is only alluded to in a portion of a single sentence, viz. ". . . Dr. Currey believed then and believes now that the surgery was properly performed in accordance with accepted medical standards."

At no place in the brief, or in the motion is it suggested there was no genuine issue of fact.

The order of the Court simply recites:

The Court being of the opinion that said motion is well taken, the Court does hereby enter judgments in favor of the defendant.

It is readily apparent that the Court, in effect, simply sustained a plea of the statute of limitations and that this is the decisive issue before this Court.

Aside from this the affidavit falls short of establishing that there is no material issue of fact.

The Doctor concludes his affidavit as follows:

(T)hat he does not know and has no way of knowing why Norma Teeters became pregnant in spite of this operation, but as a physician and surgeon he is aware of instances where the fallopian tubes have grown back even after proper surgery for their ligation.

This portion of the affidavit—the most damaging portion—runs afoul of Rule 56.05 where it is said:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

He was not present at the second operation and has no knowledge of what it revealed. Further his vague statement that he is aware of instances where the tubes have grown back even after proper surgery, standing alone and unaided, would not be admissible in evidence.

We cannot say from the record before us that there is no genuine, triable, substantial or real issue of fact. The record indicates that there is such an issue.

We proceed now to the real basis for the collapse of this suit in the trial court, i.e., the plea of the statute of limitations.

Section 28–304, T.C.A. applies to malpractice suits and provides that the action be "commenced within one (1) year after cause of action accrued."

When does the cause of action accrue?

In Bodne v. Austin, 156 Tenn. 366, 2 S. W.2d 104 (1927) the Court said:

. . . we have been referred to no authority holding that mere ignorance and failure to discover the existence of the cause of action, or the consequential damages resulting from the breach of duty or wrongful act, can prevent the running of the statute of limitations.

But this was in 1927 almost half a century ago.

In Albert v. Sherman, 167 Tenn. 133, 67 S.W.2d 140 (1934), the Court followed *Bodne.*

This was forty years ago.

In Clinard v. Pennington, 59 Tenn.App. 128, 438 S.W.2d 748 (1969) the Court of

Appeals for the Middle Section, in a very able opinion by Judge Todd, held that a malpractice suit against a physician was barred by the statute of limitation where suit was commenced more than one year after a sponge was left in plaintiff's abdomen, notwithstanding the filing of suit within one year after discovery of the sponge.

The reluctance of Judge Todd and his colleagues to follow the precedents established by this Court may be gleaned from the following statements from the opinion:

In support of proposition (b) quoted above, plaintiff argues with great earnestness, supported by many authorities from other jurisdictions, that the right of action does not "accrue", hence the statute of limitations does not begin to run, until the discovery of the injury or wrong. The members of this Court are sympathetic with the plight of those who discover their rights too late to assert them, but this Court is without power to devise or decree a means of relief in contradiction of the legislated policy of the State, § 28–304, T.C.A., and the pronouncements of our Supreme Court.

Again:

The Court of Appeals, as an intermediate appellate court, is bound by the Supreme Court's opinion which has not been overruled. World Secret Service Association, v. Travelers Indemnity Co., 55 Tenn.App. 122, 396 S.W.2d 848 (1965). Law as previously declared by the Supreme Court or enacted by the Legislature may be changed only by the Supreme Court or Legislature, and not by the Court of Appeals.

The time has come for us to re-examine the past holdings of our Appellate Courts in the light of contemporary standards of justice and of the holdings of the courts of last resort in other American jurisdictions.

Before doing so, however, it is in order that we note recent trends in Tennessee.

The statute (T.C.A. § 28–304) was amended in 1969 by the addition of the following language:

For the purpose of this section, insofar as products liability cases are concerned, the cause of action for injury to the person shall accrue on the date of the personal injury not the date of the negligence of the sale of a product and in said products cases no person shall be deprived of his right to maintain his cause of action until one (1) year from the date of his injury and under no circumstances shall his cause of action be barred before he sustains an injury.

This amendment was obviously designed to meet the holding of this Court in Jackson v. G.M.C. Olds Div., 223 Tenn. 12, 441 S.W.2d 482 (1968).

The same considerations of elemental justice would demand a similar rule in malpractice actions. We find it difficult to embrace a rule of law requiring that a plaintiff file suit prior to knowledge of his injury or, phrasing it another way, requiring that he sue to vindicate a non-existent wrong, at a time when injury is unknown and unknowable.

In 1965, the General Assembly provided for a suspension of the statute of limitations while a defendant is out of the state and beyond the reach of process. (See § 28–112 T.C.A.)

These two developments tend to indicate that the public policy of our state is opposed to requiring that suit be filed when circumstances totally beyond the control of the injured party make it impossible for him to bring suit.

We recognize that statutes of limitations are statutes of repose designed to promote stability in the affairs of men and to avoid the uncertainties and burdens inherent in defending stale claims.

In recognition of this, traditionally our courts have held that a right of action accrues immediately upon the infliction or

occurrence of injury and that mere ignorance or failure of plaintiff to discover his cause of action or the subsequent resulting damage does not toll the statute. Bodne v. Austin, *supra*.

That this is a harsh and and oppressive rule there can be little doubt. To counter the casualties it has produced the courts have fashioned the so-called "discovery doctrine", under which the statute does not begin to run until the negligent injury is, or should have been discovered.

This concept has been adopted by judicial interpretation in at least a majority of the American states. See Georgia State Bar Journal, Nov. 1971, pp. 244–250. Some of these jurisdictions limit the application of the doctrine to "foreign objects"; the majority apply it to all medical malpractice cases.

We note a few of these cases particularly pertinent to the issue here presented.

In a brilliant opinion by Justice Musmanno, the Pennsylvania Supreme Court, in Ayers v. Morgan, 397 Pa. 282, 154 A.2d 788 (1959) held that the statute of limitations begins to run against patient's action against surgeon for alleged malpractice, not when he admittedly left a sponge in the patient's abdomen during an operation, but when the patient discovered it almost nine years later.

The Court said:

This statute, as all statutes, of course, must be read in the light of reason and common sense. In its application to a given set of circumstances, it must not be made to produce something which the Legislature, as a reasonably minded body, could never have intended. The Statutory Construction Act of May 28, 1937, P. L. 1019, Article IV, sec. 52, 46 P.S. § 552, states that in ascertaining the intention of the Legislature the Courts may be guided by the presumption that

"The legislature does not intend a result that is absurd, impossible of execution, or unreasonable."

With so wholesomely logical and intelligent a standard of interpretation, it would be illogical and unintelligent to say that a person who does not know, and cannot know, for example, that a surgeon has negligently left a rubber tube in his body, would be denied damages because his claim for damages was filed, due to delay in learning of the presence of the tube, more than two years after the operation.

In Tomlinson v. Siehl, 459 S.W.2d 166 (Ky.1970), the Court held that malpractice actions do not begin to run against a physician for negligently performing a sterilization operation on a married woman until the date of discovery of her pregnancy.

The Court quoted from Layton v. Allen, 246 A.2d 794 (Del.1968) as follows:

Where choice must be made between the defendants' problems of lost evidence, faded memories, and missing witnesses on the one hand, and a deprivation to the plaintiff of any and all remedy for the wrong done her, on the other, the law must be construed in favor of the blamelessly ignorant plaintiff and against the interests and convenience of the wrong-doer.

\* \* \* \* \* \*

Upon the basis of reason and justice, we hold that when an inherently unknowable injury, such as is here involved, has been suffered by one blamelessly ignorant of the act or omission and injury complained of, and the harmful effect thereof develops gradually over a period of time, the injury is "sustained" \* \* \* when the harmful effect first manifests itself and becomes physically ascertainable.

*Tomlinson* was modified in Hackworth v. Hart, 474 S.W.2d 377 (Ky.1971) by adding to the rule of *Tomlinson* the qualification that the statute runs from the date of discovery "or from the date it should, in the exercise of ordinary care and diligence, have been discovered".

*Hackworth,* a vasectomy case, holds, *inter alia,* that the question of when plaintiff should have discovered that the wife was pregnant was for jury determination.

In Hays v. Hall, 488 S.W.2d 412 (1973), the Texas Supreme Court adopted the *Hackworth* principle as a "wise and proper rule", noting that if fertility is discovered after the period of limitations has run, legal remedy is unavailable. The Court concluded that "result so absurd and so unjust ought not to be possible."

In Custodio v. Bauer, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967) plaintiffs, husband and wife, instituted suit, in January *1965,* to recover damages resulting from the pregnancy of the wife following the failure of an operation performed in November *1963* to accomplish her sterilization.

*In a footnote to the opinion it is recited:*

It is well established in malpractice actions that the statute does not commence to run until the patient discovers his injury, or through the exercise of reasonable diligence should have discovered it. Citing cases. 59 Cal.Rptr. at 467.

As evidence of the rapidity with which the various jurisdictions have embraced this equitable doctrine, the main volume of 80 A.L.R.2d, published in *1961,* at page 388, lists *seven (7) states* as having adopted the discovery rule, *viz.,* California, Colorado, Louisiana, Missouri, North Carolina, Pennsylvania and Texas.

The main volume of the appropriate Later Case Service, published in *1968,* lists *twelve (12) additional states,* Arizona, Delaware, Hawaii, Idaho, Iowa, Maryland, Michigan, Montana, Nebraska, New Jersey, Utah and West Virginia.

The *1974* supplement lists *nine (9) more states,* Georgia, Illinois, Kansas, Kentucky, North Dakota, Oklahoma, Oregon, Rhode Island and Washington.

This brings the total to twenty-eight (28) states.

Add Tennessee to the list.

■ We adopt as the rule of this jurisdiction the principle that in those classes of cases where medical malpractice is asserted to have occurred through the negligent performance of surgical procedures, the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury. All cases contra are overruled.

■ In the instant case the cause of action accrued when plaintiff discovered that she was pregnant, or in the exercise of reasonable care and diligence, she should have so discovered.

This holding is restricted to the procedural and remedial aspects of this controversy and this opinion is not to be construed as holding that the cause of action is necessarily made out by the mere proof of pregnancy standing alone. We only hold, on the pleadings, that the suit is not barred by the statute. Factual determinations and legal conclusions must abide trial upon the merits.

We add, in meticulous fairness to the trial judge, that in ruling as he did, he properly relied upon our precedents.

We here merely recede from prior cases in order to establish a rule which we are convinced will be productive of results more nearly consonant with the demands of justice and the dictates of ethics and morality.

Reversed and Remanded. Appellee will pay all costs incident to this appeal.

FONES, C. J., and COOPER, BROCK and HARBISON, JJ. concur.

HARBISON, Justice (concurring).

I concur in the opinion prepared for the Court by Justice Henry.

In the first place it seems to me that the issue of fraudulent concealment, charged in

the amended complaint, presents factual issues which are not necessarily overcome in a conclusive manner by the affidavit of the defendant. The burden of proof rests upon the plaintiff, of course, to establish any such claim under rules of law which are well settled in this state and which are not disturbed by the opinion in the present case. Otherwise the claim of fraudulent concealment will fail.

It does seem to me that the allegations of continuing negligence are overcome by the affidavit of the doctor, since there does not appear to have been any physician-patient relationship between him and the plaintiff since December 20, 1970, and the suit was not filed until November 15, 1973. The rule of continuing negligence, of course, may in proper cases prevent the running of the statute of limitations so long as a professional relationship continues. Frazor v. Osborne, 57 Tenn.App. 10, 414 S.W.2d 118 (1966).

Apart from these considerations, it does not seem to me that the adoption of a "discovery" rule brings about a drastic change in the law of this state except in a very limited group of cases. As stated in the principal opinion, the rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action. It does not, in my opinion, permit a plaintiff to wait until he knows all of the injurious effects or consequences of a tortious act. See Hudson v. Shoulders, 164 Tenn. 70, 72, 45 S.W.2d 1072 (1932). The statute is tolled only during the period when the plaintiff has no knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry.

This is essentially the rule which has been applied for many years in this state in workmen's compensation cases with respect to the statute of limitations as contained in T.C.A. §§ 50–1003 and 1017. This subject was recently reviewed by this Court in the case of Reed v. Genesco, Inc., 512 S.W.2d 1 (Tenn.1974), and the "gener-al principle" was stated to be that the running of the statute of limitations is suspended "until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained." 512 S.W.2d at 3.

In an opinion released by this Court for publication on November 12, 1974, however, it was pointed out that the Tennessee cases "do not require that a claimant have exact or precise information as to the nature of his injury before the statute begins to run." Taylor v. Clayton Mobile Homes, Inc., 516 S.W.2d 72 (Tenn.1974).

In the vast majority of personal injury cases, of course, the date of injury and date of discovery are simultaneous. This is also true in many types of property damage actions. It is to be noted, however, that the General Assembly has undertaken to deal specifically with certain types of claims, both for personal injury and property damage, arising out of deficiencies in connection with the building and construction of improvements on real property. It has provided special statutes of limitations in those cases. T.C.A. § 28–314 et seq.

It seems to me that the decision in the present case is consistent with rules of law already being applied in this state in other types of cases, and I do not believe that it imposes any special or particular burden upon the medical profession. Practitioners in the field of malpractice are aware that claimants frequently have added spurious "fraudulent concealment" allegations to complaints in order to attempt to circumvent the statute of limitations, when there was no basis in fact or law for charging the defendant with fraud. The adoption of the "discovery" rule regarding the statute of limitations should tend to minimize this practice and to protect reputable persons from reckless and indiscriminate charges of dishonorable conduct. While the rule here adopted does relax, to some degree, the previous rule in the state regarding the statute of limitations, it does

so only in favor of an innocent plaintiff who, under all of the circumstances, neither has nor could reasonably be expected to have knowledge of the existence of his claim.

With these observations, I concur in the opinion released today.