WALTER LEE STEELE and JENNIE )
BROWN, Individually and as Next-of- )
Kin of or Guardian of )
MELVIN LEE STEELE, Deceased, )
)
     Plaintiffs/Appellants, )
)   Appeal No.
VS. )   01-A-01-9505-CH-00214
)
TENNESSEE JAYCEES, INC.; )   Davidson Chancery
TENNESSEE JAYCEE FOUNDATION, )   No. 94-2463-II
INC., Individually and d/b/a CAMP )
DISCOVERY; RES-CARE SOUTHSIDE)
COURT, Presently d/b/a SALEM )
VILLAGES OF TENNESSEE; RES- )
CARE, INC.; LAMONT WRIGHT, )
Individually and By and Through his )
next Friend and Guardian; DEWAYNE )
TINCH, a Minor, Individually and By )
and Through His Next Friend and )
Guardian; DAVID CASEY; and )
THERESA SUMRELL, )
)
     Defendants/Appellees. )

**FILED**

**Oct. 25, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

## COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE C. ALLEN HIGH, CHANCELLOR

SHELLEY I. STILES
5214 Maryland Way, Suite 210
Brentwood, Tennessee 37027
    Attorney for Plaintiffs/Appellants

RAYMOND D. LACKEY
105 Westpark Drive, Suite 424
Brentwood, Tennessee 37027
    Attorney for Defendant/Appellee Tennessee Jaycees, Inc.

ALAN B. EASTERLY
Pioneer Bank Building, Third Floor
801 Broad Street
Chattanooga, Tennessee 37402-2621
    Attorney for Defendants/Appellees Tennessee Jaycee Foundation, Inc.,
Individually and d/b/a Camp Discovery, DeWayne Tinch, and David Casey

THOMAS A. WISEMAN
JOHN T. REESE

Suite 1900, NationsBank Plaze
414 Union Street
Nashville, Tennessee  37219-1782

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
LEWIS, J.

# **O P I N I O N**

The Chancery Court of Davidson County granted summary judgment to the Tennessee Jaycees and the other appellees, on the ground that the statute of limitations had passed prior to the filing of the appellants' wrongful death complaint against them. Because we do not find that the discovery rule tolls the statute of limitations under the circumstances of this case, we affirm the trial court.

## I.

The plaintiffs are the mother and the brother of Melvin Lee Steele, a 27 year old retarded man. Mr. Steele drowned in Cordell Hull Lake on August 9, 1993, while attending Camp Discovery, a summer camp operated by the defendants. The plaintiffs were not informed of the death until August 11, and they were told at that time that their decedent had died of "natural causes."

On August 16, Jennie Lee Brown, Melvin Lee Steele's natural mother and legal guardian, hired an attorney to investigate the death of her son. A death certificate, filed on August 19, correctly stated the date of death, but did not indicate the cause. The Jackson County Sheriff began an investigation into the circumstances surrounding Melvin Steele's death, and Mrs. Brown's attorney was unable to obtain any information during the pendency of that investigation.

Copies of the police report and of an autopsy report became available in January of 1994. The autopsy report stated that death was due to drowning. Contusions and abrasions on Mr. Steele's body were suggestive of a fight or a scuffle. Upon further investigation, Mrs. Brown's attorney filed a complaint which alleged that

a camper named Lamont Wright, a mentally retarded individual with known aggressive tendencies, had deliberately drowned Mr. Steele.

The complaint charged the Jaycees and other corporate defendants involved with the operation of Camp Discovery with negligent and inadequate supervision. The complaint also named Lamont Wright, two administrators of the camp, and a fifteen year old camp counselor, who supervised the cabin to which Melvin Lee Steele, Lamont Wright and other campers were assigned.

Unfortunately, the complaint was not filed until August 15, 1994, more than one year after Melvin Lee Steele's death. The narration of events in the complaint states that the campers arrived at Camp Discovery on August 15, 1993, and that the drowning death occurred on August 16, 1993. If that had been true, the complaint would have been timely.

All the defendants, with the exception of Lamont Wright, responded, and moved the trial court for summary judgment, on the ground that the statute of limitations had passed. The motion was supported by uncontradicted evidence that death occurred on August 9, 1993. The trial court granted the motion, and finding no just reason for delay, entered a final judgment as to those defendants under Tenn.R.Civ.P. 54.02.

## II.

Statutes of limitation are legislative creations whose purpose is to compel the exercise of a right of action within a reasonable time. See *Carney v. Smith,* 437 S.W.2d 246, 248 (Tenn. 1969). They are looked upon with favor by our courts, for they prevent undue delay in bringing claims, and limit the time during which a potential defendant must fear an impending lawsuit.

The development in modern times of a body of law sometimes referred to as "the discovery doctrine" or "the discovery rule," has ameliorated the hardship which sometimes arises from the operation of statutes of limitations, by making it less likely that such a statute will unfairly deprive a plaintiff of all opportunity to enlist the assistance of the courts to vindicate his claim. But the discovery rule was not designed to rescue a plaintiff from his own error or that of his attorney, if he has failed to avail himself in a timely way of the opportunity the law provides.

The so-called "wrongful death statute," Tenn. Code Ann. § 20-5-106, contains no statute of limitations of its own. The reason is that it does not purport to create a new cause of action. Rather, it permits the right of action an injured party would have had against a tortfeasor to pass to the injured party's personal representatives, if death results from his injuries. The courts have uniformly held the one year period of limitations on actions for personal injury found in Tenn. Code Ann. § 28-3-104 to be the appropriate one to apply in wrongful death cases. See *Jones v. Black*, 539 S.W.2d 123 (1976).

The statute of limitations begins to run when the plaintiff's cause of action accrues. See Tenn. Code Ann. § 28-3-104. Historically, this has generally meant when the negligent act which causes the injury is performed. See *State v. McClellan,* 113 Tenn. 616, 624, 85 S.W. 267, 269 (1905). In more recent times, statutory enactments and judicial decisions have recognized that in cases where there is a significant interval between the wrongful act and the injury that occurs therefrom, it is more equitable to consider that the cause of action does not accrue until the injury occurs. See Tenn. Code Ann. § 29-28-103 (products liability). Tenn. Code Ann. § 29-26-116 (medical malpractice). See also *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487 (Tenn. 1975).

The courts have also found reason to allow a further extension of time for accrual of a cause of action in some cases where the injury is of a type that is not immediately discoverable, or where the fact of injury has been discovered, but it is not possible to discover the negligence that caused the injury, until after the statute of limitations has passed.  The discovery rule has evolved from the experience of our courts in dealing with such cases.

### III.

An example of an injury that is not immediately discoverable may be found in *Teeters v. Curry*, 518 S.W.2d 512 (Tenn. 1974).  The plaintiff was a woman who learned that she was pregnant exactly thirty months after voluntarily undergoing a tubal ligation for the purpose of sterilization, which had been performed by the defendant doctor.  The birth of her premature child was attended by many complications, and pursuant to medical advice, she underwent another tubal ligation. The surgeon who performed the second operation disclosed to her that the earlier surgery had not been done in accordance with the proper standards of medical care.

The defendant denied any negligence, but was granted summary judgment on his plea of the statute of limitations.  The Supreme Court reversed the trial court, stating that, "[w]e find it difficult to embrace a rule of law requiring that a plaintiff file suit prior to knowledge of his injury or, phrasing it another way, requiring that he sue to vindicate a non-existent wrong, at a time when injury is unknown or unknowable."  518 S.W.2d at 515.

The lesson of *Teeters v. Curry* was stated in a more general way in *McCroskey v. Bryant Air Conditioning Co.*, supra, as follows:

> "We hold that in tort actions . . . predicated on negligence, strict liability or misrepresentation, the cause of action accrues and the statute of limitations commences to run when the injury occurs or is discovered, or when in the

exercise of reasonable care and diligence, it should have been discovered."

524 S.W.2d at 491.

Justice Harbison wrote a concurring opinion in *Teeters v. Curry* in response to anticipated concerns that the Court's opinion would undermine the purposes of the statutes of limitations:

> [I]t does not seem to me that the adoption of a 'discovery" rule brings about a drastic change in the law of this state except in a very limited set of cases. As stated in the principal opinion, the rule applies only to cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action... The statute is tolled only during the period when the plaintiff has no knowledge at all that wrong has occurred, and as a reasonable party is not put on inquiry." 518 S.W.2d at 518.

The question of when, as reasonable persons, the appellants were put on inquiry of their cause of action is determinative of the present case.

**IV.**

The appellants insist that their claim falls within the category of cases where the cause of action does not accrue until the negligent cause of a known injury is revealed. They rely on several cases which extended the discovery rule to cover such situations.

The case of *Foster v. Harris*, 633 S.W.2d 304 (Tenn. 1982), involved professional malpractice by the defendant dentist. J.B. Foster went to the defendant for some bridgework. During the procedure, the dentist cut his own finger and the patient's lip, and their blood intermingled. Three months later Mr. Foster was diagnosed with serum hepatitis. Despite a diligent search by the plaintiff and his physicians, they were unable to determine where he contracted the disease. After six

months, Mr. Foster returned to the same dentist, and was told that on the day of the earlier visit, the defendant had been infected with serum hepatitis.

Mr. Foster's suit for medical malpractice and fraudulent concealment was filed more than one year after the first dental visit, and also more than one year after Mr. Foster's condition was diagnosed. The trial court held that the action was time-barred under the statute of limitations for medical malpractice found in Tenn. Code Ann. § 29-26-116. The Court of Appeals affirmed on the malpractice claim, holding in conformity with the high court's analysis in *McCroskey v. Bryant,* that the plaintiff's cause of action had accrued when his disease was diagnosed.

The Supreme Court reversed, stating:

"In the continuing saga of when the statute of limitations begins to run in tort cases, this case presents two unique questions. First, was the injury discovered upon diagnosis of the disease or upon discovery that the source of the disease was a negligent act, and, second, assuming that the discovery of the injury occurred in January 1976 [when hepatitis was diagnosed] did the statute of limitations begin to run when neither the existence of nor the identity of a tort feasor was known to plaintiff? Our answer to the first question is that the discovery that the source of the disease was a negligent act triggers the statute of limitations. In our opinion the second question requires a negative answer.

633 S.W.2d at 304

Another case of the same type was *Gosnell v. Ashland Chemical, Inc.,* 674 S.W.2d 737 (Tenn.App. 1984). Bobbie Edward Merritt died of leukemia after a thirty year career mixing paints and chemicals at the defendant's manufacturing facility. His widow brought suit more than one year after his death.

She filed an affidavit stating that she did not learn about the possible connection between her husband's leukemia and his long-term exposure to solvents

and chemicals until she read a newspaper article about a suit that had been filed for the wrongful death of one of Mr. Merritt's co-workers, who had also died of leukemia. The trial court granted summary judgment for the defendant, and the plaintiff appealed.

This court reversed the trial court. We held that it was a question for the jury as to whether the widow could reasonably have been expected to discover the possible connection between her husband's exposure to chemicals and the illness that led to his death, prior to the running of the statute of limitations.

## V.

While the appellants urge us to adopt the rationale of *Foster v. Harris* and *Gosnell v. Ashland Chemical, Inc.* to find that their cause of action did not accrue until they were able to fully inform themselves as to the circumstances of Melvin Lee Steele's death, we find very little resemblance between the situation of their decedent and that of Mr. Foster and Mr. Merritt.

The delay in the discovery of the origin of Mr. Foster's serum hepatitis occurred because of the inherent difficulties involved in tracing the transmission of disease. Since such diseases may be contracted without negligence by any party, Mr. Foster was not put on notice by the diagnosis that he may have been the victim of a negligent act.

The delay in the discovery that Mr. Merritt's leukemia may have been due to occupational exposure to chemicals can be attributed to the imperfect state of medical knowledge about leukemia, and also to the lack of any link that would be obvious to laypersons, between the exposure and the illness. In both the *Foster* and

*Gosnell* cases, the question of causation relied more upon expert knowledge than upon the common  experiences of the ordinary person.

Analysis of the facts of the above cases shows that the discovery rule was appropriately used to protect the rights of individuals who were not put on inquiry that the injury they suffered may have been caused by the negligence of others.  The plaintiffs in the present case, however, cannot persuasively argue that they were not put on inquiry of possible negligence once they learned of Melvin Lee Steele's death. Their prompt action in retaining an attorney shows that they not only should have been, but were in fact alert to the likelihood of negligence.

They also cannot argue that they had no idea who the responsible parties might be, since they were aware that their decedent was attending Camp Discovery at the time of his death. Regardless of the exact circumstances of the unfortunate incident, knowledge of the bare fact of Melvin Lee Steele's death would have been sufficient to put the appellants on notice of a possible claim against those charged with supervision over Mr. Steele and other mentally handicapped campers.

The discovery rule was not meant to allow a party to delay filing his claim until after he has completed the process of discovering all the factors that affect its merits.  It is clear from the record that the late filing of the plaintiffs' complaint was due to simple mistake, rather than to any unavoidable delay in discovering their cause of action.  Therefore the invocation of the discovery rule does not rescue their claim.

**VI.**

The judgment of the trial court is affirmed.  Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion.  Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
SAMUEL L. LEWIS, JUDGE