IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS OCTOBER 19, 2004

## EDDIE PUGH v. STATE OF TENNESSEE

**Direct Appeal from the Tennessee Claims Commision**
**No. 20-301-174     Nancy C. Miller-Herron, Commissioner**

---

**No. W2004-01609-COA-R3-CV - Filed February 3, 2005**

---

In 2003, a prisoner in the custody of the Tennessee Department of Correction filed a claim in the Tennessee Claims Commission against the State of Tennessee for medical malpractice. In 2001, the prisoner underwent surgery to install a colostomy due to the alleged negligence of the prison medical staff in improperly diagnosing his condition. The Commissioner granted the State's motion for summary judgment, finding the statute of limitations barred the prisoner's claim. Since the prisoner was aware that the State's negligence caused his injury at the time of his surgery, the discovery rule does not toll the running of the applicable statute of limitations. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Claims Commission Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Eddie Pugh, Tiptonville, TN, *pro se*

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, John H. Sinclair, Jr., Senior Counsel, Nashville, TN, for Appellee

## MEMORANDUM OPINION[1]

### I.
### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Eddie Pugh ("Mr. Pugh" or "Appellant") is currently an inmate in the custody of the Tennessee Department of Correction ("TDOC") housed at Northwest Correctional Complex ("NWCC") in Tiptonville, Tennessee. On either September 6 or 7, 2001, Mr. Pugh, while working in a prison paint class, began to feel discomfort in his stomach. On September 7, 2001, Mr. Pugh visited the prison clinic where prison personnel diagnosed him with constipation and gave him a laxative. Mr. Pugh returned to his housing unit to lie down, but he had to return to the clinic later that same day when he became ill again.

Around midnight on September 8, 2001, after Mr. Pugh had vomited blood, the prison staff summoned an ambulance to transport Mr. Pugh to Baptist Memorial Hospital in Union City, Tennessee. At the hospital, doctors performed a CT scan on Mr. Pugh and diagnosed him with constipation. The doctors released Mr. Pugh for his return to NWCC.

At some point, Mr. Pugh's condition worsened. On September 15, 2001, prison officials transported Mr. Pugh back to Baptist Memorial Hospital, where he was subsequently airlifted to the Regional Medical Center in Memphis. From September 15, 2001, until October 15, 2001, Mr. Pugh underwent numerous surgeries to repair a herniated colon which had protruded into his chest cavity. During the course of his treatment, doctors inserted a colostomy and conducted a surgical skin graft on his stomach.

On February 25, 2003, Mr. Pugh filed a *pro se* Claim for Medical Malpractice in the Tennessee Claims Commission against the State of Tennessee ("State"). Mr. Pugh alleged in his complaint that medical officials employed by TDOT were negligent in diagnosing his condition, which resulted in a delay in his receiving proper medical care. Particularly, Mr. Pugh alleged that, as a result of the State's negligence, the colostomy inserted into his body is now permanent.

The State filed a motion for summary judgment on May 14, 2004, alleging that Mr. Pugh's claim is barred by the statute of limitations. The State also submitted a Statement of Undisputed Material Facts which provided, in relevant part, that "[w]hen the colostomy surgery was performed

---

[1] Pursuant to Rule 10 of the Rules of the Court of Appeals of Tennessee:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

in September of 2001, Mr. Pugh attributed the need for surgery to negligence on the part of prison medical staff." On May 27, 2004, Mr. Pugh filed a response to the State's motion, wherein he conceded that the above stated fact "is undisputed for the purposes of ruling on the Motion for Summary Judgment." In addition, the State, in support of its motion, relied on Mr. Pugh's deposition testimony, which provides:

> Q. When the colostomy was inserted back in September of 2001, did you think it was because somebody at the State had overlooked something or had been negligent?
> A. Yes.

On June 10, 2004, Commissioner Nancy Miller-Herron entered an order dismissing Mr. Pugh's claim as being barred by the applicable statute of limitations.

Mr. Pugh has filed a timely *pro se* notice of appeal to this Court alleging the trial court erred in failing to apply the "discovery rule" to his claim. For the reasons set forth herein, we affirm the Commissioner's ruling.

## II.
### STANDARD OF REVIEW

In reviewing the Commissioner's decision to grant the State's motion for summary judgment, we are bound by the following standard of review:

> Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. A ruling on a motion for summary judgment involves only questions of law and not disputed issues of fact. *Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc.*, 59 S.W.3d 63, 68 (Tenn. 2001). Accordingly, the standard for reviewing a grant of summary judgment is *de novo* with no presumption of correctness as to the trial court's findings. *See Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the nonmoving party's favor. *Staples v. CBL Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000).

*Shelburne v. Frontier Health*, 126 S.W.3d 838, 841 (Tenn. 2003); *see also Kelley v. Middle Tenn. Emergency Physicians, P.C.*, 133 S.W.3d 587, 591 (Tenn. 2004).

# III.
## LAW AND ANALYSIS

On appeal, Mr. Pugh claims that the "discovery rule" applies to his case to toll the running of the statute of limitations. Accordingly, Mr. Pugh claims that the statute of limitations did not begin to run against his claim until prison staff notified him in January of 2003 that the colostomy would be permanent, at which point he learned of the State's negligence. He claims that the prison medical staff failed to inform him "about the true nature and severity of his condition," therefore, as a prisoner, he could not seek a second opinion and could do nothing to determine the extent of his injury any sooner.

Claims filed in the Tennessee Claims Commission are "barred unless the notice is given within the time provided by statutes of limitations applicable by the courts for similar occurrences from which the claim arises." Tenn. Code Ann. § 9-8-402(b) (2003). An action for medical malpractice "shall be commenced within one (1) year after the cause of action accrued." Tenn. Code Ann. § 28-3-104(a) (2003); *see also* Tenn. Code Ann. § 29-26-116(a)(1) ("The statute of limitations in malpractice actions shall be one (1) year as set forth in § 28-3-104.").

In *Teeters v. Currey*, 518 S.W.2d 512 (Tenn. 1974), our supreme court adopted the "discovery rule" and applied it to medical malpractice cases, stating:

> We adopt as the rule of this jurisdiction the principle that in those classes of cases where medical malpractice is asserted to have occurred through the negligent performance of surgical procedures, the cause of action accrues and the statute of limitations commences to run when the patient discovers, or in the exercise of reasonable care and diligence for his own health and welfare, should have discovered the resulting injury.

*Teeters*, 518 S.W.2d at 517. The legislature codified the doctrine in section 29-26-116 of the Tennessee Code, which provides: "In the event the alleged injury is not discovered within such one (1) year period, the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2) (2003); *see also Shadrick v. Coker*, 963 S.W.2d 726, 733 (Tenn. 1998).

However, as pointed out by Justice Harbison in his concurring opinion in *Teeters*:

> [T]he rule applies only in cases where the plaintiff does not discover and reasonably could not be expected to discover that he has a right of action. It does not, in my opinion, permit a plaintiff to wait until he knows of all the injurious effects or consequences of a tortious act. *See Hudson v. Shoulders*, 164 Tenn. 70, 72, 45 S.W. 1072 (1932). The statute is tolled only during the period when the plaintiff has no

knowledge at all that a wrong has occurred, and, as a reasonable person, is not put on inquiry.

*Teeters*, 518 S.W.2d at 518 (Harbison, J., concurring); *see also Woods v. Sherwin-Williams Co.*, 666 S.W.2d 77, 80 (Tenn. Ct. App. 1983). "The plaintiff may not . . . delay filing suit until all the injurious effects and consequences of the alleged wrong are actually known to the plaintiff." *Shadrick*, 963 S.W.2d at 733.

It is not required that the plaintiff actually know that the injury constitutes a breach of the appropriate legal standard in order to discover that he has a "right of action"; the plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct.

*Roe v. Jefferson*, 875 S.W.2d 653, 657 (Tenn. 1994).

Mr. Pugh contends that the "discovery rule" applies in this case because he did not learn "the true nature and severity of his condition" in September or October of 2001. The above cited authority makes clear that this is an insufficient reason to toll the running of the applicable statute of limitations in this case. Mr. Pugh admitted in his deposition that he believed the State acted negligently in September 2001 when the colostomy was first installed. In addition, in his response to the State's Statement of Undisputed Material Facts he conceded that he attributed the need for the colostomy surgery to the state's negligence. By October 2001 at the latest, Mr. Pugh had sufficient facts which would put a reasonable person on notice that he had suffered an injury due to the State's negligence. Accordingly, the statute of limitations began to run against Mr. Pugh's claim no later than October 2001. He filed his complaint in February 2003, well beyond the applicable statute of limitations. Accordingly, we affirm the Commissioner's ruling.

## IV.
### CONCLUSION

For the reasons set forth herein, we affirm the ruling of the Commissioner. Costs of this appeal are taxed against the Appellant, Eddie Pugh, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE