IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 8, 2003 Session

## SHIRLEY A. SHELBURNE, ET AL. v. FRONTIER HEALTH, ET AL.

**Appeal by Permission from the Court of Appeals**
**Circuit Court for Carter County**
**No. C7500      Thomas J. Seeley, Jr., Judge**

---

**No. E2000-02551-SC-R11-CV - Filed May 6, 2003**

---

Plaintiff, both individually and as next friend of her minor son, brought suit against Carter County, Frontier Health, and Woodridge Hospital for the wrongful death of her husband. The trial court granted summary judgment to Frontier and Woodridge. The Court of Appeals affirmed, holding that Frontier and Woodridge could not be held vicariously liable for the acts or omissions of their employee because he was entitled to immunity as a state employee. We granted review to determine whether summary judgment was properly granted in light of our decision in Johnson v. LeBonheur Children's Medical Center, 74 S.W.3d 338 (Tenn. 2002). We hold that Johnson governs the present case and that Frontier and Woodridge are not immune from liability for the acts or omissions of their immune employee. Accordingly, summary judgment was not appropriate.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed;**
**Case Remanded**

JANICE M. HOLDER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and WILLIAM M. BARKER, JJ., joined.

Robert Lewis King, Johnson City, Tennessee, for the Plaintiff-Appellant, Shirley A. Shelburne, Individually and as Next Friend of Travis Lee Shelburne.

Thomas C. McKee, Johnson City, Tennessee, for the Defendants-Appellees, Frontier Health and Woodridge Hospital.

## OPINION

### Factual Background

Richard Lee Shelburne was an inmate at the Carter County Jail. On the morning of November 12, 1997, Mr. Shelburne attempted to hang himself in his cell. Jail staff called Woodridge Hospital ("Woodridge"), a private psychiatric hospital wholly owned and operated by

Frontier Health ("Frontier"). Frontier is a not-for-profit corporation organized under the laws of Tennessee. Frontier provides crisis response services in East Tennessee under a grant from the Tennessee Department of Mental Health and Mental Retardation ("the DMHMR").[1] The parties have not distinguished between Woodridge and Frontier for purposes of this litigation.

Richard Kirk is employed by Frontier as regional director of its Crisis Response Team ("CRT"). Mr. Kirk is a licensed social worker who has received a master's degree in social work. He arrived at the jail on November 12, 1997, at approximately 11:30 a.m. and conducted a psychiatric evaluation of Mr. Shelburne. Mr. Kirk learned that on the evening before the suicide attempt, Mr. Shelburne became despondent when his wife threatened to leave him. In a subsequent conversation, however, Mrs. Shelburne assured Mr. Shelburne that she would not initiate divorce proceedings.

After completing the evaluation, Mr. Kirk prepared two reports, a Mental Health Consult that was left with jail staff and a Crisis Response Evaluation that Mr. Kirk kept for his files at Woodridge. Both of these reports indicated that Mr. Shelburne was alert, oriented, coherent, and not psychotic at the time of the evaluation. The reports also stated that Mr. Shelburne denied any suicidal intent and that he "promised safety." In Mr. Kirk's opinion, Mr. Shelburne's suicide attempt was an impulsive situational gesture that was resolved when Mr. Shelburne was assured that Mrs. Shelburne had no intent to initiate divorce proceedings. Mr. Kirk advised jail staff to maintain increased supervision over Mr. Shelburne but stated that further suicide protocol was not necessary. Mr. Kirk had no further contact with Mr. Shelburne.

On the morning of November 19, 1997, Mr. Shelburne and the other inmates were preparing to leave for work detail. As the supervising officer walked out of the jail lobby, Mr. Shelburne grabbed the pistol from the officer's holster and fatally shot himself.

Mrs. Shelburne, both individually and as next friend of her son Travis Lee Shelburne, brought suit against Carter County as well as Frontier and Woodridge for the wrongful death of her husband. The trial court granted the motion for summary judgment filed by Frontier and Woodridge. The Court of Appeals affirmed the trial court's judgment, holding that Frontier and Woodridge could not be held liable for Mr. Kirk's acts or omissions under the theory of respondeat superior because Mr. Kirk was entitled to immunity as a state employee. We granted review to determine whether summary judgment was properly granted in light of our decision in Johnson v. LeBonheur Children's Medical Center, 74 S.W.3d 338 (Tenn. 2002).

---

[1] In 2000, the General Assembly amended the Tennessee Code Annotated so that all references made to the DMHMR were deleted and substituted with "the Department of Mental Health and Developmental Disabilities." 2000 Tenn. Pub. Acts 947, § 6.

**Standard of Review**

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. A ruling on a motion for summary judgment involves only questions of law and not disputed issues of fact. Owner-Operator Indep. Drivers Ass'n v. Concord EFS, Inc., 59 S.W.3d 63, 68 (Tenn. 2001). Accordingly, the standard for reviewing a grant of summary judgment is de novo with no presumption of correctness as to the trial court's findings. See Webber v. State Farm Mut. Auto. Ins. Co., 49 S.W.3d 265, 269 (Tenn. 2001). The evidence must be viewed "in the light most favorable to the nonmoving party," and all reasonable inferences must be drawn in the nonmoving party's favor. Staples v. CBL & Assocs., 15 S.W.3d 83, 89 (Tenn. 2000).

**Analysis**

I. Statutory Immunity: Mr. Kirk's Status as an Immune State Employee

State employees "are absolutely immune from liability for acts or omissions within the scope of the . . . employee's . . . employment . . . ." Tenn. Code Ann. § 9-8-307(h) (Supp. 1994). Tennessee Code Annotated section 8-42-101(3)(D) provides,

> "State employee" also includes persons who are both members of community-based screening agencies that function under [Tennessee Code Annotated sections 33-2-601 to -604][2] and who screen individuals to make judgments required by [Tennessee Code Annotated sections 33-2-601 to -604]. . . . The commissioner [of mental health and mental retardation] shall register only the names of properly qualified and designated persons with the board of claims.

Tenn. Code Ann. § 8-42-101(3)(D) (1993). Therefore, Mr. Kirk must satisfy two requirements to be deemed a state employee: 1) he must be a member of a community-based screening agency that functions under Tennessee Code Annotated sections 33-2-601 to -604; and 2) he must screen individuals to determine if hospitalization is appropriate pursuant to these sections.[3]

A. Community-Based Screening Agency

We shall first determine whether Mr. Kirk is a member of a community-based screening agency. To make this determination, we must first address whether Frontier and Woodridge are community-based screening agencies that function under sections 33-2-601 to -604. In these sections, the General Assembly directs the DMHMR to develop a system for "assuring the most

---

[2] Tennessee Code Annotated section 33-2-603 was repealed in 1988. 1988 Tenn. Pub. Acts 586, § 2.

[3] In 2000, the General Assembly moved the provisions of title 33, chapter 2, part 6 to title 33, chapter 6, part 1.

appropriate and effective care for individuals admitted to and discharged from state-supported mental health institutes." Tenn. Code Ann. § 33-2-601 (Supp. 1997); see also Tenn. Code Ann. §§ 33-2-602, -604 (Supp. 1997). The legislature requires the DMHMR to design the system to "minimize length of confinement, promote speedy return to the community, and maximize the individual's ability to remain in a community setting." Tenn. Code Ann. § 33-2-601 (Supp. 1997). In addition, the system must include a "community-based screening process." Id. Therefore, an organization is a community-based screening agency under these sections if it provides screening services to individuals as part of the state system.

The record indicates that Frontier provides crisis response services in East Tennessee under a grant of the DMHMR. Frontier's CRT, which is led by Mr. Kirk, performs emergency psychiatric evaluations upon individuals who may be suicidal to determine the form of treatment that will be most effective. Many Frontier employees, including Mr. Kirk, are registered with the Tennessee Board of Claims as members of a community-based screening agency. Frontier and Woodridge are, therefore, community-based screening agencies that function under sections 33-2-601 to -604. Accordingly, Mr. Kirk's status as an employee of Frontier and Woodridge satisfies the first requirement of section 8-42-101(3)(D)Śthat he be a member of a community-based screening agency.

## B. Screening

We next address whether Mr. Kirk screens individuals to make judgments under sections 33-2-601 to -604. A health care provider makes such judgments when evaluating an individual to determine whether hospitalization is necessary for effective treatment. See Tenn. Code Ann. §§ 33-2-601, -604 (Supp. 1997).

As regional director of Frontier's CRT, Mr. Kirk performs emergency psychiatric evaluations of individuals who may be suicidal. These evaluations are based upon clinical interviews during which he obtains a psychiatric history from the individual, assesses the individual's mental status, makes a diagnosis, and offers recommendations for treatment. In 1995, Mr. Kirk completed the DMHMR's training program and obtained his certification as a non-physician pre-screening evaluator under Tennessee Code Annotated section 33-6-103(f)(2).[4] In his affidavit, Mr. Kirk

---

[4] If a person
(i) has a master's degree . . . in . . . social work . . .; and
(ii) is licensed or certified to practice in Tennessee . . .; and
(iii) is a member of a crisis service program which is under contract with the department to implement chapter 2, part 6 of this title; and
(iv) satisfactorily completes a training program approved and provided by the department relative to emergency commitment criteria and procedures;
then the commissioner may designate the person to take all or any action authorized for a physician and perform all or any duty imposed on a physician by subdivisions (a)-(e), to the extent such duties are within the scope of practice of the profession in which the person is licensed or certified.

(continued...)

-4-

testified that pre-screening evaluation is a regular part of his customary duties as a member of Frontier's CRT. He also testified that he was performing these duties when he evaluated Mr. Shelburne on November 12, 1997.

Mrs. Shelburne asserts, however, that a health care provider does not operate under sections 33-2-601 to -604 unless the individual being evaluated: 1) is admitted to or discharged from a mental health institute that is owned and operated by the State; and 2) is a free member of the community at large. We disagree.

When construing statutes, we are required to ascertain and effectuate the legislative intent and purpose of the statutes. See State v. Walls, 62 S.W.3d 119, 121 (Tenn. 2001). Legislative intent must be derived from the plain and ordinary meaning of the statutory language if the statute is devoid of ambiguity. See Mooney v. Sneed, 30 S.W.3d 304, 306 (Tenn. 2000). The plain language of section 8-42-101(3)(D) and section 33-2-601 indicates that the statutes were not enacted to apply to health care providers only when they admit or discharge an individual from a state-owned psychiatric hospital. While section 33-2-601 does address the development of a system for "assuring the most appropriate and effective care for individuals admitted to and discharged from state-supported mental health institutes," the section also provides for a "community-based screening process." "Screening" involves examining an individual to determine whether hospitalization is appropriate. Screening does not necessarily result in hospitalization. The very purpose of screening is to distinguish between individuals who need to be confined in order to protect themselves or others and those who can be treated in less restrictive ways. It would be contrary to the purposes of the state system described in section 33-2-601 to require a health care provider to hospitalize an individual before the health care provider is deemed a state employee. Section 33-2-601 requires that the system promote the return of individuals to their communities and minimize the length of confinement in mental health institutes. We therefore conclude that it is not necessary for an individual to be admitted to or discharged from a state-owned mental health institute for a health care provider to meet the requirements of section 8-42-101(3)(D).

In addition, health care providers who screen incarcerated individuals are not precluded from state employee status under section 8-42-101(3)(D). Section 33-2-601 states that the DMHMR must design the state system to "promote speedy return to the community, and [to] maximize the individual's ability to remain in a community setting." In the context of this section, "community" refers to a setting outside of a hospital. The goal of the system is to ensure that individuals can function outside the hospital setting without posing a threat to themselves or others. "Community" as used in this section does not necessarily refer to society at large or require that the individual being evaluated be free from restraint. Accordingly, Mr. Kirk is a health care provider who screens individuals to make judgments under sections 33-2-601 to -604. Therefore, Mr. Kirk satisfies both requirements under section 8-42-101(3)(D) and is an immune state employee.

---

[4](...continued)
Tenn. Code Ann. § 33-6-103(f)(2)(A) (Supp. 1997).

II. The Immunity Claim of Frontier and Woodridge

We must now determine whether Frontier and Woodridge are immune from liability. In Johnson v. LeBonheur Children's Medical Center, 74 S.W.3d 338, 341 (Tenn. 2002), this Court held that a private hospital may be held vicariously liable under the doctrine of respondeat superior based solely upon the acts or omissions of a state-employed physician resident if that resident is found to be an agent or servant of the hospital. We conclude that Johnson governs this case.

Johnson involved a medical malpractice claim filed against LeBonheur Children's Medical Center and the health care providers who participated in Amman Johnson's heart surgery. 74 S.W.3d at 341. The plaintiff, Amman's mother, claimed that two physician residents from the University of Tennessee's training program, who were on rotation at LeBonheur, were acting as LeBonheur's agents during the surgery and that LeBonheur was vicariously liable for their negligence. Id. The residents were compensated by the University of Tennessee but were required to follow LeBonheur's protocols, rules, and regulations in providing treatment or services to LeBonheur's patients. Id.

We agreed that the residents were immune from liability as state employees under Tennessee Code Annotated section 9-8-307(h). Id. at 343. We concluded, however, that "[n]othing in the statute . . . immunizes a private hospital from liability for the acts or omissions of physician residents employed by the State who are also acting as agents or servants of the private hospital." Id. We also rejected LeBonheur's argument that it could not be held liable under the doctrine of respondeat superior based upon the acts of an agent who is immune from liability. Id. at 344. We determined that case law indicated only three instances in which a principal may not be held vicariously liable under this doctrine. Id. at 345. These instances include:

> (1) when the agent has been exonerated by an adjudication of non-liability, (2) when the right of action against the agent is extinguished by operation of law, or (3) when the injured party extinguishes the agent's liability by conferring an affirmative, substantive right upon the agent that precludes assessment of liability against the agent.

Id. The first and third category did not apply to the facts of the case. Id. As to the second category, we stated that section 9-8-307(h) does not extinguish a claimant's right of action but merely immunizes state employees from individual monetary liability. Id. at 345-46. Therefore, we held that the personal immunity of the residents did not prohibit LeBonheur from being held vicariously liable for the residents' negligence. Id. at 346. We ultimately held that a genuine issue of material fact existed as to whether the residents were acting as LeBonheur's agents or servants and remanded the case to the trial court. Id. at 347.

The facts of Johnson are similar to the facts of the present case. Both cases involve negligence claims brought against health care providers and their employers. Frontier is a private, not-for-profit corporation that provides mental health services and owns and operates several private

psychiatric hospitals, including Woodridge. Like LeBonheur, Frontier and Woodridge provide a service to the State and benefit in so doing. Mr. Kirk, like each of the residents in <u>Johnson</u>, is an immune state employee. Frontier and Woodridge argue, as LeBonheur did, that they cannot be held vicariously liable for the acts or omissions of an immune agent. We reject this argument as we did in <u>Johnson</u>.

First, as we pointed out in <u>Johnson</u>, section 9-8-307(h) does not extinguish a claimant's right of action but merely immunizes state employees from individual monetary liability. <u>Id.</u> at 345-46. Since Mr. Kirk's conduct remains available as a basis for the imposition of liability in the Tennessee Claims Commission against the State, Mrs. Shelburne's right of action survives. Accordingly, Mr. Kirk's personal immunity does not prevent Frontier and Woodridge from being held vicariously liable for his negligence under the doctrine of respondeat superior.

Furthermore, none of the statutes we have reviewed grant immunity to private hospitals. Section 9-8-307(h) grants immunity to state employees. While section 8-42-101(3)(D) provides that members of community-based screening agencies are state employees, nothing in that section indicates that the agencies themselves are state employees. Under our decision in <u>Johnson</u>, section 9-8-307 does not immunize a private hospital from liability for the acts or omissions of state employees who are also acting as agents of the private hospital. <u>Id.</u> at 343. Frontier and Woodridge, therefore, are not immune from liability for the acts or omissions of Mr. Kirk.

## Conclusion

In light of our decision in <u>Johnson</u>, we hold that Frontier Health and Woodridge Hospital are not immune from liability for the acts or omissions of their immune agent. Therefore, we reverse the judgments of the trial court and the Court of Appeals, and we remand the case to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellees, Frontier Health and Woodridge Hospital, and their surety, for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE