IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2022 Session

## ALEXANDREA PARKER EX REL. ORRIN ARLO PARKER v. JEANIE D. DASSOW, M.D.

**Appeal from the Circuit Court for Hamilton County**
**No. 21C396  Kyle E. Hedrick, Judge**

_____

**No. E2021-01402-COA-R3-CV**

_____

This appeal involves a healthcare liability action.  The plaintiff sued a physician who had interpreted the results of her fetal ultrasound.  The physician was employed by a Tennessee state university as a professor.  Her job duties included both educational responsibilities and clinical care to patients in the residency clinics.  The trial court granted summary judgment in favor of the physician, finding that she had received no personal gain by her act of interpreting the ultrasound.  Therefore, the physician possessed absolute immunity under the Tennessee Claims Commission Act for her actions within the scope of her state employment.  Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and ARNOLD B. GOLDIN, JJ., joined.

F. Dulin Kelly and Clinton L. Kelly, Hendersonville, Tennessee, for the appellant, Orrin Arlo Parker, a minor and through his mother and next friend, Alexandrea Parker.

Dixie Cooper and Christopher A. Vrettos, Brentwood, Tennessee, for the appellee, Jeanie D. Dassow, M.D.

# OPINION

## Background

Jeanie D. Dassow, M.D. was employed by the University of Tennessee Health Science Center College of Medicine ("the University of Tennessee") during August 2018. As part of her employment with the University of Tennessee, Dr. Dassow's job description included both clinical care providing direct care to patients in the residency clinics as well as education conducting lectures, teaching rounds, and clinic supervision.

Dr. Dassow provided patient care at Erlanger Health System ("Erlanger") pursuant to the Second Amended Affiliation Agreement between Erlanger and the University of Tennessee. It is undisputed that the affiliation agreement required the University of Tennessee to provide Erlanger with "Academically-Related Professional Services," which included residents and supervising professors, as well as "Coverage" consisting of physicians to staff the residency clinics at Erlanger. Erlanger paid the University of Tennessee for its professional services based on the affiliation agreement, and Dr. Dassow's salary was paid by the University of Tennessee.

Pursuant to the affiliation agreement between the University of Tennessee and Erlanger, Dr. Dassow assigned to Erlanger her right to charge and receive payment for her professional services performed at Erlanger. The agreement required Dr. Dassow to cooperate with Erlanger regarding billing. Pursuant to the agreement, Erlanger paid the University of Tennessee $109,797 for Dr. Dassow to "[p]rovide professional services and coverage" at Erlanger clinics pursuant to the agreement. Erlanger also paid the University of Tennessee $15,476 for Dr. Dassow's professional liability insurance, as provided in the affiliation agreement. The affiliation agreement required that all professionals provide proof of professional liability insurance coverage upon request, stating that professionals would not be covered under the Tennessee Claims Commission Act "for the practice of medicine (or other professions) when supervising residents in the teaching setting and fulfilling criteria which would allow them to bill patients as an individual practitioner."

According to Dr. Dassow's affidavit, she was an employee of the University of Tennessee in 2018, carrying out those job duties in a residency clinic named Erlanger Women's Health Specialists, commonly referred to "UT OB." She stated that while working in the clinic, she wore a white coat with a "UT logo" and her identification badge also included a "UT logo." Dr. Dassow denied ever holding herself out to be an Erlanger employee.

In August 2018, Alexandrea Parker ("Ms. Parker"), who was pregnant, went to Erlanger. While at Erlanger, Ms. Parker had a fetal ultrasound performed which Dr. Dassow interpreted. Dr. Dassow concluded that the fetal ultrasound was normal and reported in the chart "ANATOMY REVIEW APPEARS NORMAL." Ms. Parker

subsequently gave birth to the minor child, Orrin Arlo Parker ("the Child"). Erlanger submitted a claim to Ms. Parker's insurance company for the fetal ultrasound interpreted by Dr. Dassow in August 2018 and collected the payments from the insurance company pursuant to the agreement between the University of Tennessee and Erlanger.

The cause of action in this matter involves Dr. Dassow's alleged failure to diagnose the Child's meningocele prior to his birth. In April 2021, Orrin Arlo Parker, a minor and through his mother and next friend Alexandrea Parker ("Plaintiff"), filed a complaint against Dr. Dassow in the Hamilton County Circuit Court ("Trial Court"), alleging medical negligence and violation of informed consent. According to the complaint, the Child has permanent injuries resulting from the failure to diagnose his illness prior to birth.

Dr. Dassow subsequently filed a motion for summary judgment, a memorandum of law in support of her motion, and a statement of material facts. In her motion and memorandum, Dr. Dassow argued, *inter alia*, that she was entitled to absolute immunity as an employee of the State of Tennessee and was within the scope of her employment when interpreting the fetal ultrasound. Dr. Dassow stated that her actions did not fit within any exception to Tenn. Code Ann. § 9-8-307 that would prevent her from being entitled to absolute immunity. According to Dr. Dassow, she was a state employee, had not billed for reviewing the ultrasound, was not permitted to bill for reviewing the ultrasound, and did not receive any payment or compensation for reviewing the ultrasound. Dr. Dassow argued that she received 100% of her salary from the University of Tennessee and that it was irrelevant whether another entity had billed for the services she provided. Dr. Dassow stated that she had obtained no personal gain from the professional care she provided for Ms. Parker and asked the Trial Court to grant her motion for summary judgment.

Plaintiff filed a response to the summary judgment motion, arguing that Dr. Dassow had received personal gain from her treatment of Ms. Parker. Plaintiff argued that (1) Dr. Dassow billed for interpreting Ms. Parker's fetal ultrasound and Ms. Parker's insurance company would not have paid the claim if Dr. Dassow had not billed for it; (2) the fetal ultrasound performed was a "'billable' service" and there is no immunity when a physician can bill for a professional service through another entity; and (3) Erlanger paid $109,797 each year, in addition to the cost of her professional liability insurance, as compensation for Dr. Dassow's clinical care in its hospital. Plaintiff further argued that Dr. Dassow was required to cooperate with Erlanger for billing purposes and that Erlanger collected payments for Dr. Dassow's professional services and then paid her compensation. According to Plaintiff, there was "no meaningful difference between billing personally and billing through Erlanger" and "Dr. Dassow made money when Erlanger made money." Plaintiff further argued that the provision in the affiliation agreement between the University of Tennessee and Erlanger requiring professional liability insurance coverage would not be necessary if Dr. Dassow had absolute immunity as she claimed. Plaintiff requested that the motion for summary judgment be denied.

Plaintiff listed as a statement of material fact as follows, citing to the agreement between the University of Tennessee and Erlanger: "Part of Dr. Dassow's compensation consisted of income Erlanger received from her professional services." Dr. Dassow disputed that fact, stating that the agreement reflected that "Erlanger contracted to pay [the University of Tennessee] a rate for Dr. Dassow's professional services." Dr. Dassow included in her statement of material facts that 100% of her salary was paid by the University of Tennessee, which Plaintiff denied. Dr. Dassow also listed as a material fact that she had not personally billed for interpretation of Ms. Parker's fetal ultrasound, was not permitted to personally bill for the ultrasound, and had not received any payment or compensation from the fetal ultrasound performed, all of which Plaintiff denied. Additionally, Plaintiff admitted for purposes of the summary judgment motion that Erlanger had billed for Ms. Parker's ultrasound.

Following consideration of the motion and response, the Trial Court entered an order in November 2021, granting summary judgment in favor of Dr. Dassow. The Trial Court found that Dr. Dassow was employed by only the University of Tennessee and not Erlanger, that she received compensation from only the University of Tennessee, and had not received any additional compensation above her salary for Ms. Parker's ultrasound she interpreted. Although Erlanger had billed patients for Dr. Dassow's services with her cooperation and provider ID number, Dr. Dassow had received no direct compensation from Erlanger. The Trial Court found that Dr. Dassow was an employee of only the University of Tennessee and not a dual employee of Erlanger. Therefore, the Trial Court found that Dr. Dassow had not received any personal gain from the fetal ultrasound interpreted and that the Tennessee Claims Commission Act is applicable to provide her with absolute immunity in this action. Plaintiff timely appealed to this Court.

## Discussion

Although not stated exactly as such, Plaintiff raises the following issue for our review: whether the Trial Court erred in granting summary judgment in favor of Defendant based upon its determination that Defendant was not acting for personal gain as a matter of law. This case involves summary judgment awarded in favor of Dr. Dassow. As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare– Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee

Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

\* \* \*

[I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

The dispositive issue in this case as presented by Plaintiff is whether Dr. Dassow received personal gain for interpreting the ultrasound for Ms. Parker. The Tennessee Claims Commission Act provides that all state officers and employees shall be absolutely immune from liability based on acts or omissions done within the scope of his or her employment. Tenn. Code Ann. § 9-8-307(h) (2020). "Tenn. Code Ann. § 9-8-307(h) does not extinguish a claimant's right of action but merely immunizes state employees from individual monetary liability." *Prewitt v. Semmes-Murphey Clinic, P.C.*, No. W2006-00556-COA-R3-CV, 2007 WL 879565, at *6 (Tenn. Ct. App. Mar. 23, 2007) (citing *Shelburne v. Frontier Health*, 126 S.W.3d 838, 844-45 (Tenn. 2003)). However, a state employee is not absolutely immune from liability when the act or omission is done for personal gain. Tenn. Code Ann. § 9-8-307(h) (2020); *Id.*

At the time of Ms. Parker's ultrasound, Dr. Dassow was employed by the University of Tennessee as a professor. Plaintiff admitted for purposes of the summary judgment motion in its response to Dr. Dassow's statement of material facts that Dr. Dassow's job description at the University of Tennessee "included both clinical care (direct patient care in the residency clinic) and education (didactic lectures, teaching rounds, and clinic supervision)." Therefore, when Dr. Dassow supervised students and provided direct patient care in the residency clinic at Erlanger, her actions were within the scope of her employment with the University of Tennessee. We agree with Plaintiff that dual employment is not required for the action of a state employee to be for personal gain. However, the state employee must receive some personal gain outside the benefits of his or her state employment.

Plaintiff argues that Dr. Dassow is not entitled to absolute immunity because she was acting for personal gain when she interpreted the fetal ultrasound on Ms. Parker. Plaintiff cites to *Hayden v. Waller*, No. 02A01-9511-BC-00241, 1996 WL 740820 (Tenn. Ct. App. Dec. 30, 1996), in support of his argument. However, we determine *Hayden* to be distinguishable from the present case. In *Hayden*, the defendant physician was a dual employee of the University of Tennessee and a medical group for which he was also employed. *Id.* at *8. The *Hayden* Court held that "[s]o long as the physician is receiving payment from an employer other than the State of Tennessee to perform the work in question, he is not entitled to immunity." *Id.* at *7. The defendant physician worked for the university supervising medical students and residents at a local hospital but did not provide direct medical care to patients in his capacity as a university employee. *Id.* at *8. However, the defendant physician also was employed by a medical group where he rendered direct care to patients as part of his employment with the medical group. *Id.* The university paid the defendant physician "for the administrative, teaching, and research activities" he performed, and the medical group paid the physician for his "direct patient care services." *Id.* at *5. Stemming from his direct patient care, the medical group billed

for the defendant physician's patient care and paid him a salary, which this Court held was a personal gain to the physician. In *Hayden*, the defendant physician was sued after providing "direct, 'hands on' care" to a patient, which was not within the scope of his state employment with the university. *See id.* at *3, 8. This Court held in *Hayden* that the defendant physician was dually employed by the medical group and that the physician was not absolutely immune from liability. *Id.* at *8.

In the present case, Dr. Dassow received compensation from only the University of Tennessee. As part of her job duties with the University of Tennessee, Dr. Dassow was obligated to provide coverage at Erlanger, directly treating patients in the residency clinic. The facts in *Hayden* are clearly distinguishable from the present action.

Although only persuasive authority, the case of *Thompson v. Reg'l Med. Ctr. at Memphis*, 748 F. Supp. 575, 1990 WL 161041 (W.D. Tenn. 1990), is factually similar to this case. In *Thompson*, resident physicians were employed and paid solely by the University of Tennessee. 748 F. Supp. at 577. Pursuant to an agreement between the university and a hospital, the resident physicians were permitted to practice medicine at the hospital, and the hospital paid the university for their professional services. *Id.* at 576-77. In *Thompson*, the issue was whether the resident physicians were state employees. *Id.* at 577. The plaintiff in *Thompson* argued that the university "acted merely as a conduit" for compensation paid by the hospital because the hospital had reimbursed the university for the services of the resident physicians practicing in the hospital. *Id.* The United States District Court for the Western District of Tennessee recognized that the "statute makes no reference to the source of funds and there is nothing in the language of the statute that suggests that an employee who is paid directly by the state is not a 'state employee' if the state is reimbursed for the salary that it pays the employee." *Id.* As such, the District Court ultimately held that the physicians were state employees and entitled to absolute immunity for their treatment of patients within the scope of their state employment. *Id.* at 578.

We acknowledge that the primary issue in *Thompson* was whether the resident physicians were considered state employees instead of whether they received personal gain. However, Plaintiff has made a similar argument characterizing Dr. Dassow's salary as being paid by Erlanger and argues that this is personal gain to Dr. Dassow. We disagree that Dr. Darrow's salary was paid by Erlanger. Dr. Dassow's employer, the University of Tennessee, had entered into a contract with Erlanger to provide "coverage" and "academically-related professional services" within its hospital. Coverage within the hospital included physicians to staff the hospital's residency clinics, and "academically-related professional services" included residents and supervising physicians to practice medicine within the hospital. In exchange for the University of Tennessee providing coverage and academic-related services at Erlanger, Erlanger paid the University of Tennessee a certain amount of money, including varying amounts for the services of several physicians, and Erlanger was permitted to bill and receive payments stemming from the professional services of those physicians.

Both the University of Tennessee and Erlanger received a benefit from the affiliation agreement. Dr. Dassow was not a party to the affiliation agreement. Dr. Dassow was included in the affiliation agreement but only as a physician provided by the University of Tennessee that would practice medicine at Erlanger based on the affiliation agreement, and Erlanger paid the University of Tennessee a certain amount of money for Dr. Dassow's professional services and her malpractice insurance. Erlanger did not pay the contracted amount of money to Dr. Dassow, but to the University of Tennessee. In this case, there is no evidence that the affiliation agreement was merely a "conduit" to allow Erlanger to provide additional compensation to Dr. Dassow, and it is undisputed that Dr. Dassow practicing medicine in the residency clinic was within the scope of her employment with the University of Tennessee.

Additionally, as part of her employment with the University of Tennessee, Dr. Dassow had given up her right to charge and collect payments for her professional services at Erlanger, pursuant to the affiliation agreement between the University of Tennessee and Erlanger. For purposes of immunity, this Court has held previously that the state-employed physician's ability to bill for his or her professional services is the most conclusive factor in determining whether the physician has immunity. *Prewitt*, 2007 WL 879565, at *11. Although the affiliation agreement required Dr. Dassow to cooperate with billing, Erlanger submitted the claims to Ms. Parker's insurance carrier for the fetal ultrasound and collected the payment for Dr. Dassow's professional services. There is no evidence that Dr. Dassow directly received money for the fetal ultrasound performed on Ms. Parker. As such, we find and hold, as did the Trial Court, that Dr. Dassow received no personal gain from her medical treatment of Ms. Parker. Therefore, Dr. Dassow has absolute immunity as an employee of the State of Tennessee for her act of interpreting the fetal ultrasound at issue, and we affirm the Trial Court's grant of summary judgment in favor of Dr. Dassow.

## Conclusion

The judgment of the Trial Court is affirmed in its entirety. This matter is remanded to the Trial Court for collection of the costs assessed below. Costs on appeal are taxed to the appellant, Orrin Arlo Parker, a minor and through his mother and next friend, Alexandrea Parker, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE